No. 46,286

NORTHERN NATURAL GAS COMPANY, a Corporation, *Appellant*, v. ALICE BENDER, County Treasurer of Clay County, Kansas; EFFIE WARD, County Clerk, *ex officio* County Assessor, and Clerk of the Board of County Commissioners, Clay County, Kansas; THE BOARD OF COUNTY COMMISSIONERS OF CLAY COUNTY, KANSAS; E. E. KRETZMEIER, PAUL FOX and F. W. BAUER, Members of the Board of County Commissioners of Clay County, Kansas; RONALD F. DWYER, State Director of the Property Valuation Department of the State of Kansas; THE STATE BOARD OF TAX APPEALS OF THE STATE OF KANSAS; THE STATE BOARD OF EQUALIZATION OF THE STATE OF KANSAS; and CHARLES B. JOSEPH, RALPH MCCARTY, ROBERT C. GEER, EUGENE E. LEE and WILLIAM D. ANDERSON, JR., Members of the State Board of Tax Appeals and the State Board of Equalization of the State of Kansas, *Appellees*.

(490 P. 2d 399)

136

Opinion filed November 6, 1971.

*Mark H. Adams, II,* of Adams, Jones, Robinson and Manka, of Wichita, argued the cause, and *Wm. S. Richardson,* of the same firm, *F. Vinson Roach* and *Frank J. Duffy,* of Omaha, and *Wayne W. Ryan,* of Clay Center, were with him on the brief for the appellant.

*Matthew J. Dowd,* Assistant Attorney General, argued the cause, and *Vern Miller,* Attorney General, *Clarence J. Malone,* Chief Attorney for the Property Valuation Department, *John Bingham,* Attorney for Property Valuation Department, *John Royston,* Chief Attorney for the State Board of Tax Appeals, and *Bruce Wingerd,* County Attorney, were with him on the brief for the appellees.

*John Berglund,* of Clay Center, was on the brief *amicus curiae.*

The opinion of the court was delivered by

FONTRON, J.: This is an action by Northern Natural Gas Company, (to whom we shall refer either as plaintiff or Northern), to recover taxes paid under protest to Clay County.

The plaintiff owns and operates an interstate system of pipelines and is subject to regulation by the Federal Power Commission. Some of its Kansas property is in Clay County. The defendants named in the caption are Clay County and State officials whose duties are related to the assessment or collection of taxes.

Northern predicates its right to recover its taxes on two bases: First, that the valuations placed on its Kansas properties by the State Director of Property Valuation (herein called Director) and on the percentage share thereof allocated to Clay County, as such were upheld by the State Board of Tax Appeals, (referred to herein as the Board) are unreasonable, arbitrary and capricious. Second,

that its property in Clay County is assessed at 30% of its justifiable value, while other property within the county is assessed at not more than 20%.

On June 22, 1970, the trial court sustained motions to dismiss all defendants except Alice Bender, the County Treasurer of Clay County, on the ground that she, alone, was a necessary party. Under this ruling the Clay County Clerk, *ex officio* County Assessor, the Clay County Board of County Commissioners and its individual members, the State Director of Property Valuation and the State Board of Tax Appeals (which constitutes also the State Board of Equalization) and its members were dismissed from the lawsuit. This ruling forms one of the grounds of Northern's appeal.

Shortly thereafter, the trial court further ruled that it did not have jurisdiction of one of the issues in this action, to wit, whether the valuation placed on Northern's property by the Director and upheld by the Board, was unreasonable, arbitrary or capricious. This ruling is challenged as erroneous and is the second point raised in this appeal.

We will discuss the two points raised by Northern in reverse order. Before doing so, however, we are impelled to chronicle the events which ultimately led to the arrival of this appeal upon our doorstep.

In May, 1969, the Director of Property Valuation, whose duty it is under K. S. A. 79-1404 *Fifteenth* to appraise and assess, among other property, oil and gas pipelines and their properties, determined that the value of Northern's Kansas properties was $225,096,190 and further determined, applying the 30% assessment factor set out in L. 1963, ch. 460, § 1 (since amended and now appearing as K. S. A. 79-1439) that the assessed value thereof was $67,528,850. Of this total assessed value, the Director allocated $5,163,193 to Clay County as its share thereof, and certified the same to the County Clerk.

Northern was dissatisfied with the Director's determination and appealed therefrom to the State Board of Tax Appeals pursuant to K. S. A. 1969 Supp. 74-2426 (now L. 1971, ch. 249, § 1). The provisions of this statute will later be noted in some detail.

After hearing Northern's appeal, the Board, on August 22, 1969, entered a final order upholding the Director's valuation and assessment of plaintiff's properties and denying the appeal.

On September 19, 1969, the plaintiff, again following the procedures outlined in 74-2426, appealed from the Board's final order

to the District Court of Pawnee County, in which some of its properties were located. Subsequently, Northern made timely payment to Clay County, under protest, of the first half of its 1969 tax.

Northern instituted the present action under K. S. A. 79-2005 (now L. 1971, ch 303, § 1) to recover the protested tax. It was filed January 14, 1970, and while Northern's appeal from the final order of the Board (sometimes referred to herein as the direct appeal) was still pending in the Pawnee County District Court, and before the same had been heard. However, the direct appeal was later tried in Pawnee County and on July 31, 1970, the district court of that county entered judgment upholding the order of the Board. That decision of the Pawnee District Court was handed down shortly after the Clay County District Court ruled in the present case. Incidentally, the decision in the Pawnee County case (the direct appeal) was also brought to this court but has not yet been decided. If this maze of dates, actions and appeals seem confusing to the reader, we can only echo that sentiment.

Turning to the points raised on appeal, it is the position of the Clay County Treasurer, who alone remains a defendant, that the Director's appraisal of Northern's property (often referred to as the state appraisal, or state assessment) was upheld on appeal by the Board; that the Board's decision is final unless reversed on a direct appeal taken therefrom under K. S. A. 1969 Supp. 74-2426; that the appeal procedure contained in 74-2426 is exclusive where a state assessment is involved; and that the validity of a state appraisal and assessment may not be challenged, nor the Director's determination of justifiable value be attacked collaterally, in actions to recover protested taxes brought under 79-2005.

We find considerable merit in this approach. K. S. A. 79-1404 reads in pertinent part:

"That it shall be the duty of the director of property valuation, and he shall have the power and authority:

. . . . . . . . . . .

"*Fifteenth.* To make appraisement and assessment of all railroads and the property of railroad corporations, . . . of all telegraph lines and property, of all telephone lines and property, the property of all express companies, sleeping car companies, and private car lines, doing business within the state of Kansas, of gas pipe lines and property, of all oil pipe lines and property, of all street railroads, electric lines and property, and all express company property, within and without corporate limits of cities, doing business in the state."

K. S. A. 79-709 provides in substance that after the Director has completed the assessment, the amount thereof shall be apportioned among the several counties and other taxing districts concerned in proportionate ratios. The amounts so apportioned are then certified to the county clerk of each county who in turn notifies the proper taxing district officials thereof for their use in making their levies. (L. 1959, ch. 365, § 15, now K. S. A. 79-5a06.) Essentially this procedure was pointed out by this court in *Continental Pipe Line Co. v. Cartwright*, 154 Kan. 430, 118 P. 2d 1052.

Clearly, it seems to us, one of the principal objectives of this legislation must have been the attainment of uniformity in the valuation and assessment of public transportation and utility properties which extend throughout more than one county within the state, and which, from their nature, constitute a unitary system.

The procedure appears pointedly designed to eliminate those inequalities in the assessed values of utility properties which might well occur between counties if, in each of the counties affected, (twenty-six counties are said to be involved in Northern's several lawsuits) the local assessor was free to exercise his individual judgment and discretion.

A statewide appraisal of a statewide unitary system undoubtedly makes good sense. But the uniformity accomplished by means of a statewide assessment could largely be nullified if the assessment could be challenged in a local action to recover taxes paid under protest, filed under 79-2005, in each of the counties receiving a pro rata share of the assessment.

In our opinion the legislature intended to forestall the catastrophic consequences which might attend a flood of lawsuits challenging the validity of a state assessment, and this they sought to accomplish by providing a specific avenue through which a state assessment might reach the courts by means of a single appeal.

K. S. A. 74-2438 provides that an appeal from any finding, ruling or order of the Director can be taken to the Board of Tax Appeals. K. S. A. 74-2437 (c) specifically authorizes the Board "to hear appeals from the director of property valuation on the assessment of state assessed property." K. S. A. 1969 Supp. 74-2426 substantially provides, so far as pertinent here, that within 10 days after the Board enters its final order on any appeal, a copy thereof be mailed to the person, firm, corporation or association who was a party to the appeal and within 30 days thereafter any such party may ap-

peal, in an ad valorem property tax case, to the district court of any county in which any portion of the property is located.

Northern followed the procedure outlined in 74-2426 by first appealing from the Director's appraisal to the Board and next appealing from the Board's final order to the District Court of Pawnee County. The statutory route thus followed by Northern provides an appropriate and, we believe, an adequate means of obtaining a review of the Director's determination of assessed value. It appears to serve well what must have been the legislative purpose of providing uniformity in the assessment of utility systems which transcend county lines. The rule is well known that in the construction of legislation, courts may look to the purpose and intent of the legislature in its enactment. (*Natural Gas Pipeline Co. v. Commission of Revenue & Taxation*, 163 Kan. 458, 466, 183 P. 2d 234; *Tilley v. Keller Truck & Implement Corp.*, 200 Kan. 641, 646, 438 P. 2d 128.)

We believe that where property has been assessed by the Director on a statewide basis, the method of review outlined in 74-2426 is exclusive, and the assessment may not be challenged collaterally under 79-2005. Otherwise, not only might confusion, delay and harassment result, but multiplicity of actions, abhorred in the law, might attend as well. In *Cities Service Oil Co. v. State Board of Equalization*, 199 Kan. 235, 237, 428 P. 2d 456, this court said that:

". . . the law is so watchful against all vexatious suits that it will not suffer two actions of the same nature to be pending for the same demand. . . ."

Taxation is an unloved subject, but no one in modern times, to our limited knowledge, has come up with a practical alternative. Government is indispensable to any civilized society and an orderly system of assessment and collection of taxes is an imperative to a government's successful operation. In *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 436 P. 2d 982, we stressed the necessity of order and timeliness in a viable system of taxation and we surveyed in some detail the procedures ordained by the legislature in providing a logical and orderly scheme. On page 223, we said:

"The tax procedure and time schedule established by the legislature in Chapter 79 of the Kansas Statutes Annotated requires the work of taxation to be done speedily and to the end that the business of government may be carried on."

The same theme runs through our opinion in *Mobil Oil Corporation v. Medcalf*, 207 Kan. 100, 483 P. 2d 1111:

"The importance which this court has attached to the orderly and timely execution of the legislative scheme of taxation was demonstrated early in our jurisprudence in *Benn v. Slaymaker*, 93 Kan. 64, 143 Pac. 503. . . ." (p. 105).

It must be conceded that 79-2005 contains no language limiting the grounds on which the legality of a protested tax may be assailed. However, the statute must be considered, together with all other statutes bearing on taxes, as an integral part of the overall pattern and scheme of taxation. Viewing the statute from this standpoint, we reach the conclusion that 79-2005 is not now an appropriate vehicle for challenging the validity of a state assessment.

We are aware of our decision in *Sinclair Pipe Line Co. v. State Commission of Revenue & Taxation*, 181 Kan. 310, 311 P. 2d 342. That was an action to recover taxes paid under protest on property assessed by the then State Commission of Revenue and Taxation sitting as the State Board of Appraisers. The decision in that case was handed down in 1957, when the provisions of G. S. 1949 74-2426, the predecessor of our present statute, did not apply to ad valorem taxes. Hence, the route now available under 74-2426 for contesting the validity of a state assessment made for ad valorem tax purposes was not open to a taxpayer. Nor was that route available in 1963, when this court in *Builders, Inc. v. Board of County Commissioners*, 191 Kan. 379, 381 P. 2d 527, noted the fact as follows:

". . . the legislature specifically prohibited an appeal from the decision of the State Board of Equalization by the following proviso in G. S. 1961 Supp., 74-2426:

" '*Provided*, That no such appeal may be taken to the district court from any order determining, approving, modifying or equalizing the assessment of property for property tax purposes. . . .' " (pp. 384, 385.)

It was only in 1969 that the legislature cured the deficiency by adding to the proviso quoted above, the following words: "unless such order is unreasonable, arbitrary or capricious." The *Sinclair* case does not provide a precedent, as Northern would have us believe.

Similarly, the case of *Kansas City Southern Rly. Co. v. Board of County Comm'rs*, 183 Kan. 675, 331 P. 2d 899, lacks precedential value. It also was decided prior to the 1969 amendment.

The plaintiff voices concern over the fact that it must pay its taxes

under protest to avoid payment of interest and that it can recover the taxes thus paid only through a proceeding filed under 79-2005. To counter this position the defendant points to actions which the Board is empowered to take under K. S. A. 79-1702 (now K. S. A. 1970 Supp.) to order the cancellation of a tax unpaid or the refund of a tax collected, and suggests that under the authority of this statute effective relief could be provided should Northern prevail in its direct appeal.

We need not speculate as to whether the relief which the Board might afford under 79-1702 is equivalent to that which could be obtained under 79-2005. We think there can be no insuperable obstacle to a taxpayer filing a protest action predicated on an alleged illegal state appraisement or assessment and, if the validity thereof has not previously been determined through the direct appeal approach, having trial of the action deferred until such a determination be forthcoming.

The conclusion we reach today has been foreshadowed in prior decisions. *Anderson v. Dunn*, 189 Kan. 227, 368 P. 2d 6, was an action to recover taxes paid under protest. In the course of our opinion, which involved primarily the admissibility of evidence, we said:

"The action at bar is not one to question the proceedings of the county board, but an independent action to recover taxes paid under protest. *This action is not even one to review the proceedings of the State Board of Tax Appeals.* (*Union Pacific Railroad Co. v. Sloan*, 188 Kan. 231, 361 P. 2d 889; *City of Kansas City v. Jones & Laughlin Steel Corp.*, 187 Kan. 701, 360 P. 2d 29.) (p. 228.) (Emphasis supplied.)

In *McManaman v. Board of County Commissioners*, 205 Kan. 118, 468 P. 2d 243, an action which involved an alleged lack of uniformity in the assessment of property between different taxing districts, the court said:

". . . A protest action, by its very nature, is directed to the acts of local taxing officials in the county in which the taxes are protested, rather than officials of other counties or the state director of property valuation.

"Where the foundation of a taxpayer's complaint is, as in this case, the failure of assessing officials in other counties to comply with the statute (K. S. A. 79-1439) and assess property at 30% of justifiable value, or the failure of the director of property valuation to face up to his statutory responsibility of insuring that assessment of property between different counties be uniform and equal, we hold that these matters cannot furnish the basis for granting relief in a protest action. In reaching this conclusion, we in no way suggest that relief is unavailable under K. S. A. 79-2005 where there is inequality or lack of uni-

formity in assessments amounting to constructive fraud *within the county* where the taxes are protested. (See, *Beardmore v. Ling*, supra; *Sebits v. Jones*, supra; *Cities Service Oil Co. v. Murphy*, supra; *Addington v. Board of County Commissioners*, supra.)" (pp. 124, 125.)

See, also, *Harshberger v. Board of County Commissioners*, 201 Kan. 592, 442 P. 2d 5.

We experience some difficulty in following the plaintiff's contention that as construed by the trial court, and now by this court as well, K. S. A. 1969 Supp. 74-2426 violates article 11, § 1 of the Kansas Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

Briefly put, article 11, § 1 of the Kansas Constitution states that the legislature shall provide for a uniform and equal rate of assessment and taxation, while provisions of the 14th Amendment to the United States Constitution prohibit the states from depriving any person of life, liberty or property without due process of law and from denying to any person within its jurisdiction the equal protection of its laws.

Basically the plaintiff's argument, as we understand it, boils down to this: If the validity of a statewide assessment made by the Director can be challenged only through the direct appeal approach provided in 74-2426, while an assessment made locally by the county assessor may be challenged in a protest action pursuant to 79-2005, an unreasonable and arbitrary classification results which violates constitutional mandates.

First of all we might say this court has held that uniformity in taxing implies equality in the burden of taxation and that true equality cannot exist without uniformity in the basis of assessment as well as in the rate of levy. (*Addington v. Board of County Commissioners*, 191 Kan. 528, 531, 382 P. 2d 315; *Commercial National Bank v. Board of County Commissioners*, 201 Kan. 280, 286, 440 P. 2d 634.) However, the rationale of these cases is not determinative of the matter posed here, for it is argued that the classification of Northern's property is unreasonable.

We cannot agree with that argument. The classification of plaintiff's property does not appear to us as arbitrary or unreasonable with respect either to assessment or to method of review. Although the utility properties described in 79-1404 *Fifteenth* are appraised and assessed by the Director on a statewide basis while

other property is locally valued and assessed, the property in both categories is actually assessed on the same basis, *i. e.*, it is appraised or valued at justifiable (now fair market) value in money and assessed at 30% thereof. (L. 1969, ch. 433, §§ 2, 3, 6, now K. S. A. 79-501, 79-1406, 79-1439.)

We believe it only realistic to require that property of public utility and transportation systems, normally not confined within the boundaries of a single county, be appraised and assessed on a statewide and unitary basis by a single assessing authority, so long as such property is measured by the same yardstick as property valued and assessed on a local basis.

Whether the assessment be statewide or local, provision is made for redress to the courts through appeal procedures. Where assessment is by the state, appeal is first to the Board and thereafter judicial review is available by appeal to the district court of any county in which any part of the property is located. The requirements of due process are met. (See *Zimmerman v. Board of Review of the Employment Security Division*, 208 Kan. 68, 490 P. 2d 359.)

The case of *Casco Co. v. Thurston County*, 163 Wash. 666, 2 P. 2d 677, is persuasive. There, the plaintiff claimed that an act passed by the legislature relating to the recovery of taxes paid under protest was unconstitutional because of a provision permitting public service companies, whose operating property was located in more than one county and was assessed as a unit by the state board, to file an action in any one of the counties in which the tax was payable, joining as defendants all the counties to which their taxes had been paid, and to recover in a single action from all of them.

It was contended this section of the act created an unlawful discrimination and offended against the Constitution. In rejecting this contention the Washington Supreme Court said:

"As we understand it, the public service instrumentalities mentioned in this section are the only ones having property in more than one county whose property is assessed as a unit by the state. That being so, they naturally form a class distinct from other taxpayers, and it would appear natural and reasonable to so classify them as to reduce litigation, and simplify and speed the final adjustment of their tax controversies, which might otherwise congest the court dockets of every county in the state. We see nothing arbitrary about such a classification. . . .

"Certainly, it is well within the limits set by the United States supreme

court in the recent case of *State Board of Tax Commissioners of Indiana v. Jackson*, 283 U. S. 527, 51 Sup. Ct. 540, 75 Law Ed. 1248 . . ." (p. 675.)

An additional claim by Northern is briefly briefed and merits brief mention. It is asserted that the trial court's interpretation of 79-2005 imposes an impermissible burden on interstate commerce in violation of article 1, § 8 of the federal Constitution. The sole authority cited by plaintiff is *Norfolk & W. R. Co. v. Tax Comm'n.*, 390 U. S. 317, 19 L. Ed. 2d 1201, 88 S. Ct. 995. That case holds that application of a track mileage formula used by a state in assessing the rolling stock of an interstate railroad located within its borders, which results in an assessment far exceeding the value of the property, violates the Commerce Clause.

We recognize the rationale of *Norfolk*, but the case is not in point. The issue before us in this appeal is not whether the assessment of Northern's property by the Director is unreasonable or arbitrary to the point of constituting, in effect, a tax upon its property in other states, and thus burdening commerce, but whether determination of the question may be presented in an action brought under 79-2005. Although we hold that the validity of the assessment itself may not be challenged under that statute, we also point out that a means of determining the question is provided through the procedures set out in 74-2426. We perceive no burden on interstate commerce resulting from this interpretation.

Finally we turn to the issue of parties. The Board of County Commissioners of Clay County, Kansas, and its individual members, together with the County Clerk and ex officio County Assessor, moved that the action be dismissed as to them for the asserted reason they were not indispensable, necessary or proper parties. This motion was sustained and the Clay County defendants were dismissed.

As we read the contents of their motion, the Clay County officials apparently relied on language found in the recent case of *Cities Service Oil Co. v. Kronewitter*, 199 Kan. 228, 230, 428 P. 2d 804, also a tax protest action. Their reliance, however, we believe was ill founded.

It is true we said in *Kronewitter* that public officials who determine or review valuation and assessment of property for tax purposes do not thereby become indispensable, necessary or proper parties in an action to recover protested taxes. Those words, however, must be viewed in relation to the circumstances concerning

which they were written. In the *Kronewitter* case the motion to dismiss was filed by members of the State Board of Tax Appeals, and the judgment of dismissal which we upheld pertained only to them, not to county officials.

We adhere to the view that state taxing officials are not indispensable, necessary or proper parties in a local action to recover taxes paid under protest, for they claim no beneficial interest in the taxes whose recovery is sought, nor have they any function to perform with respect to a refund. (See *McManaman v. Board of County Commissioners,* supra.)

But local officials whose duties extend far beyond the mere assessment and valuation of property occupy a different status. Not only may the financial resources of the county with whose government they are charged be diminished or impaired by the refund of protested taxes, but theirs will be the responsibility of minimizing or recouping the loss.

It is of interest to note that L. 1971, ch. 303, § 1 (2), provides that whenever a taxpayer shall be entitled to recover any taxes paid under protest, the governing board of the taxing district or districts to which such taxes were distributed shall provide for the refund, and where by reason of the refund it would be impossible to pay for the imperative functions of the fund for the current year, the governing body shall issue no-fund warrants to pay such refund, and shall make a tax levy the following year to pay such warrants and interest. While this act has no bearing on the present lawsuit, being effective only from and after April 30, 1971, it may be said to indicate legislative thinking in this area.

Whether or not the County Commissioners and the County Clerk of Clay County may properly be denominated indispensable or necessary parties in this lawsuit, it is our opinion they at least come within the category of proper parties defendant and were correctly joined as such. In 67 C. J. S., Parties, § 33, p. 948, we find the statement that in some suits all persons materially interested in the event of the suit may be made parties defendant. The shoe appears to fit our case.

We affirm the judgment of the trial court so far as it holds that it lacked jurisdiction to determine, in this protest action, the validity of the assessment of plaintiff's property made by the State Director of Property Valuation and upheld by the State Board of Tax Ap-

peals, but we reverse the judgment so far as it dismisses the action as to the Board of County Commissioners of Clay County, the members of said Board and the County Clerk of that county.