611 P.2d 1030 (1980)
101 Idaho 245
UNIVERSITY OF UTAH HOSPITAL AND MEDICAL CENTER, a licensed hospital; Sharon Ann Verikas, an indigent infant; and Peter Verikas and Terri Verikas, indigent persons, Rodger Dale Hayden and Deborah Hayden, parents of Mathew Hayden, infant deceased, Petitioners-Appellants,
v.
August C. BETHKE, Clerk; Elmer Ketterling, Chairman of the Board, Mrs. Jo Hillis and Lyle Barton, Members of the Board of County Commissioners, Minidoka County, Defendants-Respondents.
No. 13368.
Supreme Court of Idaho.
May 2, 1980.
Rehearing Denied June 30, 1980.
*1031 Dean Williams of Kerr, Williams & Clarke, Blackfoot, for petitioners-appellants.
Donald R. Workman, Prosecuting Atty., Minidoka County, Rupert, for defendants-respondents.
DONALDSON, Chief Justice.
This action involves a suit by the University of Utah Hospital and Medical Center (hereinafter referred to as Medical Center) against Minidoka County under chapters 34 and 35, Title 31 of the Idaho Code (1974), more commonly known as the Idaho Medical Indigent Statutes. This case has been before this Court on three previous occasions, so it is not necessary to mention the facts in great detail. It is sufficient to state that the Medical Center seeks payment from the county for emergency medical services rendered to two infant medical indigents who were residents of Minidoka County at the time of their treatment.
A complete procedural history of this case may be found at University of Utah Hospital v. Bethke, 98 Idaho 876, 574 P.2d 1354 (1978). There, we affirmed that portion of the district court's decision which denied mandamus relief to the Medical Center, but remanded that portion of the district court's decision which had disposed of the Medical Center's appeal from the county clerk's refusal to allow a certificate of medical indigency. 98 Idaho at 878, 574 P.2d at 1356.
On remand, both parties submitted motions for summary judgment and stipulated that the consolidated claims had been fully tried and were ready for decision. In its memorandum opinion, the district court determined that the Verikas and Hayden families were medically indigent at the time the Medical Center filed applications with the county on their behalf. It also ruled that the Medical Center was not a state institution, as had been argued by the county, since the statute obviously applied only to institutions within the State of Idaho. Since state institutions may not recover *1032 against the county under the statutes, this means of preventing the Medical Center from recovering for its services was thwarted. The district court did hold, however, that the Medical Center was not licensed in Idaho and denied recovery to the Medical Center on that basis. It reasoned that the legislature did not intend to have the counties of Idaho pay all charges for an indigent patient who received medical treatment outside the state and construed I.C. § 31-3502(2), which defines "hospital", as meaning only those facilities licensed within the state. The Medical Center appeals from this decision, the sole issue being whether the definition of "hospital" in I.C. § 31-3502(2) limits payment for necessary medical care and treatment to only those hospitals located in Idaho.
In considering the meaning of "hospital," we are obliged to note the legislature has declared that its statutory definition of the term was not intended to be exclusive. Idaho Code § 31-3502 provides: "[a]s used in this chapter, and chapter 34, title 31, Idaho Code, the terms defined in this section shall have the following meaning, unless the context clearly indicates another meaning ... ." (emphasis added). When the definition of hospital is analyzed contextually in the following statutes (which do not limit treatment or payment to hospitals located in Idaho), it is clear that the meaning is not confined to those medical institutions within the state.
In passing the Idaho Medical Indigent Statutes, the legislature declared the public policy to be one which was "to safeguard the public health, safety and welfare, and to provide suitable facilities and provisions for the care and hospitalization of indigent persons in this state, and to provide for the payment thereof... ." I.C. § 31-3501. With this declaration in mind, the legislature passed other statutes making treatment available to the "medically indigent."[1]
At the time these two claims arose, a medically indigent person in Idaho was required to make a written application to the clerk of the board of county commissioners of the county where the applicant resided, setting forth and describing all resources of the applicant. Before any medical aid could be given, the application was required to be filed in the office of the clerk of the county board of commissioners. I.C. § 31-3404, as amended, 1976 Idaho Sess. Laws, ch. 121, § 2, p. 463.
The county board of commissioners was to then investigate and process such application and make findings as to the applicant's indigency. Under former I.C. § 31-3405, the county clerk could authorize the person to be hospitalized or placed in the county hospital or, if the county was not provided with a hospital, the clerk could "authorize said person to be placed in some other suitable institution ... ." I.C. § 31-3405, as amended, 1976 Idaho Sess. Laws, ch. 121, § 3, p. 465. If, in the judgment of the commissioners the applicant was indigent, they were required to "make such provisions for his relief, or pay for his hospitalization, as may be necessary under the circumstances." I.C. § 31-3406. In the event of a medical emergency, a claim against the county was still allowed for services rendered to the indigent prior to approval of the application. I.C. § 31-3407. Under I.C. § 31-3508, the county responsible for payment was required to pay "regular hospital charges for hospitalization of a medically indigent person to the hospital rendering such services." (emphasis added)
None of the above-mentioned statutes limits hospitalization or payment of hospital charges to only those institutions either licensed *1033 or located in Idaho. Considering the wording of these statutes and the declaration of public policy as expressed in I.C. § 31-3501, it would not be a reasonable interpretation that the legislature intended to limit medical services rendered to indigents to only those hospitals licensed in Idaho.
Respondent urges that the definition of "hospital" contained in I.C. § 31-3502(2) limits payment to only those facilities licensed in Idaho. I.C. § 31-3502(2) defines "hospital" as:
"[A] facility licensed as such in Idaho providing community service for in-patient, medical and/or surgical care of acute illness or injury and/or obstetrics, and excluding state institutions."
However, a literal reading of the above statute does not limit hospitals to only those facilities located in Idaho. The words "as such" indicate an exemplary use of the phrase as it applies to "facility." "As" means "like, similar to, of the same kind, in the same manner, in the manner in which." Black's Law Dictionary 104 (5th ed. 1979). "Such" means "of that kind ... alike, similar, of the like kind." Black's Law Dictionary, supra at 1284. Clearly, the phrase "as such" is exemplary, not exclusive, so that it applies to hospitals licensed like those licensed in Idaho.
Had the legislature intended the statute to apply only to Idaho hospitals, the term "as such" was not necessary to the statute and constitutes mere surplusage. This Court is required to give effect to very word, clause and sentence of a statute, where possible, Messenger v. Burns, 86 Idaho 26, 30, 382 P.2d 913, 915 (1963); State v. Alkire, 79 Idaho 334, 338, 317 P.2d 341, 344 (1957). A rule of statutory construction is that courts will not nullify a statute or deprive the law of force or potency unless it is absolutely necessary, Maguire v. Yanke, 99 Idaho 829, 590 P.2d 85 (1978). We therefore decline to hold that the term "as such" was mere surplusage and thus, we construe the statute as applying to all hospitals, including appellant.
Respondent also raises an argument that the statute cannot apply to hospitals outside of Idaho because the statute requires that the facility provide a community service. Apparently, respondent would have us believe that a facility may not provide a community service for those people it treats because they do not live in the same state in which the hospital is situated. We find little merit in this argument. Appellant's brief states that in the period from May to October of 1974, the time frame in which these two claims occurred, there were in excess of 800 admissions from Idaho to the University of Utah Hospital. This statement is uncontested by respondent. The record also indicates that the University of Utah Hospital serves a six state area and is the only institution of its kind to treat critically ill infants that require intensive care treatment between Denver and the West Coast. If these medical admissions do not constitute a community service bestowed upon Idaho citizens, then we are perplexed as to what a community service is. Respondent admits that citizens of Rupert or Burley who need to travel to Twin Falls for medical care are receiving a community service from the Twin Falls hospital, but that these same people are not receiving a community service from the University of Utah Hospital should they happen to go there for their treatment. We are unable to distinguish between the two situations, and thus reject respondent's argument on this matter.
Respondent also argues that, by allowing the University of Utah Hospital to recover against the county for services it rendered to medical indigents, we are opening the doors to a flood of indigent people in need of medical care who will travel to South Africa for heart transplants and to New York and Europe for specialized health care, and who will then turn around and expect the county to reimburse the hospitals for such treatment. We likewise find this argument unpersuasive. First, we are limiting our decision in this case to the facts before us. This precludes the county from paying for services which are of a nonemergency nature and which do not involve *1034 neonatal care for critically ill and usually premature infants requiring intensive care treatment. Second, it is highly questionable that a hospital in South Africa or Europe which treated an indigent Idahoan could qualify under the statutes because such a hospital unlike the University of Utah, would not be providing a community service to the citizens of this state. As the University of Utah Hospital provides a medical emergency service to critically ill infants who would otherwise have to travel greater distances to receive treatment if refused, the case at bar is distinguishable from the isolated cases of heart transplants or exotic foreign medical treatments. We therefore conclude that the legislature intended to cover any hospitals rendering medical services to Idaho indigents, and that the hospital is entitled to recover against Minidoka County for services it rendered to the medical indigents involved in this case.
We therefore reverse the grant of summary judgment rendered by the district court in favor of Minidoka County and remand this case to the district court with instructions to enter judgment for the Medical Center on the claim for its services rendered to the medical indigents, in conformity with the provisions of I.C. § 31-3505. No attorney's fees to either party. Costs to appellant.
McFADDEN and BISTLINE, JJ., concur.
BAKES, J., dissents without opinion.
SHEPARD, Justice, dissenting.
The majority opinion terminates the continual saga of the University of Utah Hospital's attempts to collect approximately $28,000.00 from Minidoka County, Idaho. The Verikas and Hayden infants were born in 1974 and each experienced medical problems which the attending physicians believed could be adequately treated only at the University of Utah Hospital. The infants were transferred to the University of Utah Hospital. The record is devoid of any indication that any contact was made with any official of Minidoka County, either prior to or during the infants' hospitalization at the University of Utah Hospital. The infant Verikas survived, but the infant Hayden died. The claim of the University of Utah Hospital against the Hayden family was discharged in the bankruptcy of the Haydens in 1975. Thereafter, University of Utah Hospital brought its action against Minidoka County for the total charges claimed by the hospital for its care of the Verikas and Hayden infants.
On the initial appeal, this Court opined that the Verikas and Hayden families were not shown to be medically indigent and the hospital was precluded from recovery. On rehearing, that opinion was withdrawn and in the face of procedural problems, the Court remanded the matter for further proceedings. The trial court, following hearing, held that the Verikas and Hayden families were medically indigent, but that the University of Utah Hospital was not a facility licensed in the State of Idaho (I.C. § 31-3502(2)) and hence had no basis for recovery against Minidoka County.
I agree with the majority opinion that the controlling question is the meaning of and legislative intent displayed in I.C. § 31-3502(2). However, in my judgment, the majority seriously errs in using an esoteric, artificial and strained construction of the phrase "in Idaho" to hold that the legislature intended that phrase to mean "outside Idaho."
When confronted with such linguistic legerdemain, I cannot but recall the unreported case of Regina v. Ojibway, 8 Crim.L.Q. 137 (Toronto 1965), wherein the court converted a pony, fortuitously saddled with a feather stuffed blanket, into a small bird, thus falling within the provisions of the Ontario Small Birds Act. My reaction to the majority's grammatical shell game can only be expressed in the language of the Jupiter Pluvius opinion in Hillman v. Hardwick, 3 Idaho 255, 28 P. 438 (1891):
"Heroically setting aside the statute, the decisions, and the evidence in the case, he [the trial judge] assumes the role of Jupiter Pluvius, and distributes the waters of Gooseberry creek with a beneficent recklessness, *1035 which makes the most successful efforts of all the rain wizards shrink into insignificance, and which would make the hearts of the ranchers on Gooseberry dance with joy, if only the judicial decree could be supplemented with a little more moisture. The individual who causes two blades of grass to grow where but one grew before is held in highest emulation as a benefactor of his race. How then shall we rank him who, by judicial fiat alone, can cause four hundred inches of water to run where nature only put one hundred inches? (We veil our faces, we bow our heads, before this assumption of judicial power and authority.)" Id. at 260, 28 P. at 439.
So in the instant case the majority opinion in effect uproots the University of Utah Hospital from its site in Salt Lake City and transposes it magically to an undescribed location "in Idaho" from which it distributes "community service" for the benefit of the officialdom and citizens of Minidoka County, Idaho.
The majority opinion unequivocally states that there is only one interpretation of the statutory phrase, "`hospital' means a facility licensed as such in Idaho." I must disagree and not even very respectfully. In my judgment, the very best position that the majority can assert is that the statutory phrase is subject to more than one interpretation. Even assuming that the majority's interpretation could, by some stretch of the imagination, be correct, I cannot believe it would be the preferred interpretation. In my linguistic judgment, "as such" refers back to the antecedent noun "hospital." See generally Barrett v. International Underwriters, Inc., 346 F.2d 345 (7th Cir.1965); United States Fidelity & Guaranty Co. v. Inman, 65 S.W.2d 339 (Tex.Ct.Civ. App. 1933). In my opinion, and contrary to the assertion of the majority, "in Idaho" is a distinct prepositional phrase separate and apart from "as such." If the legislature had intended that the term "hospital" was to mean any licensed hospital regardless of whether located in or out of Idaho, it could merely have defined "hospital" as "a facility licensed as such" and not utilized the phrase "in Idaho." Alternatively, the legislature could have completely and clearly defined "hospital" as meaning any facility so licensed by any state and wherever located.
I believe a part of the difficulty in the instant case comes from the overuse of the phrase "as such" in legislative drafting and in legal writing. I, for one, following the gymnastics of today's majority, will be more cautious in utilizing the phrase. However, I note that the utilization of "as such" is not unusual in Idaho statutes. For example, I.C. § 54-1601(10) states that "`nursing home' means any institution or facility defined as such for licensing purposes * * *." (Emphasis supplied.) Clearly, in that statute, "as such" can only refer back to "nursing home." That is the more common interpretation of "as such" following a past participle, such as "defined" or "licensed."
This Court has stated that "words and phrases of a statute must be given their usual, plain and ordinary meaning * *." Striebeck v. Employment Security Agency, 83 Idaho 531, 536, 366 P.2d 589, 591 (1961). Of additional significance is the statement that "laws are enacted to be read and obeyed by the people and in order to reach a reasonable and sensible construction thereof, words that are in common use among the people should be given the same meaning in the statute as they have among the great mass of the people who are expected to read, obey and uphold them." City of Lewiston v. Mathewson, 78 Idaho 347, 354, 303 P.2d 680, 684 (1965); see also Nagel v. Hammond, 90 Idaho 96, 408 P.2d 468 (1965); Adams v. Lansdon, 18 Idaho 483, 110 P. 280 (1910); State v. Omaechevviaria, 27 Idaho 797, 152 P. 280 (1915). Most relevant to the instant case is the statement "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." John Hancock Mut. Ins. Co. v. Haworth, 68 Idaho 185, 192, 191 P.2d 359, 362 (1948) (quoting Independent *1036 Ins. Co. v. Commissioner, 17 B.T.A. 757, 766).
I cannot join the majority in its syntactic hopscotch, but would approve the district court's statutory construction and affirm its judgment.
NOTES
[1] In University of Utah Hospital v. Bethke, 98 Idaho 876, 574 P.2d 1354 (1978), we held that the county clerks and district courts were bound by the legislature's definition of "medically indigent":

"`Medically indigent' means any person who has been hospitalized or is in need of hospitalization and who, if an adult, together with his or her spouse, or whose parents or guardian if a minor, does not own assets or does not have an average monthly income from all sources from which said parties could reasonably be expected to pay the amount incurred or to be incurred for such hospitalization." 98 Idaho at 878, 574 P.2d at 1356.