654 P.2d 901

UNION PACIFIC RAILROAD COMPANY, et al., Petitioners-Respondents,

v.

The BOARD OF TAX APPEALS of the State of Idaho, Respondents,

and

The State Tax Commission of the State of Idaho, Respondent-Appellant.

BURLINGTON NORTHERN, INC., a Delaware corporation, Petitioner-Respondent,

v.

The BOARD OF TAX APPEALS of the State of Idaho, Respondent,

and

The State Tax Commission of the State of Idaho, Respondent-Appellant.

No. 14194, 14195.

Supreme Court of Idaho.

Nov. 22, 1982.

David G. High, Deputy Atty. Gen., Boise, for respondent-appellant.

Thomas C. Frost, Deputy Atty. Gen., Boise, for respondents.

Robert L. Bilow and Eugene A. Ritti, of Hawley, Troxell, Ennis & Hawley, Boise, for petitioners-respondents.

SHEPARD, Justice.

These are appeals in consolidated cases from a declaratory judgment adverse to the State Tax Commission, holding that the Union Pacific Railroad Company and Burlington Northern, Inc., petitioners-respondents, have a right to appeal the Tax Commission's valuations of the railroads' operating properties to the Board of Tax Appeals. The Tax Commission asserts that the only avenue of appeal available to the railroads in this instance is through the district court, pursuant to the state administrative procedure act, that our statutes do not contemplate such an appeal to the Board of Tax Appeals and that our constitution and public policy considerations should preclude a review of Tax Commission decisions by the Board of Tax Appeals.

The Union Pacific and Burlington Northern railroads own and operate interstate railroads, a part of which are located within Idaho. The Tax Commission valued the statewide operating properties of the railroads for the calendar year 1980 and notified Burlington Northern that the value of its property was $24,595,916, and notified Union Pacific that its property was valued at $231,347,080. The railroads sought and obtained informal conferences with the Commission's staff, seeking adjustments of those values, with no success. Thereafter formal hearings were held pursuant to I.C. § 63–710, and the Commission issued final decisions granting some but not all of the railroads' requested adjustments. Subsequently, the counties in which the operating properties of the railroads are located imposed their respective tax levies on the basis of the valuations set by the Tax Commission. The railroads paid those taxes under protest.

At that point the railroads perceived a dilemma. If they appealed to the Board of Tax Appeals, the Tax Commission could argue, as it does here, that the only avenue of appeal is through the district court pursuant to the administrative procedure act, while if they filed for appellate review in the district court, it might be argued that they failed to exhaust their administrative remedies in not appealing to the Board of Tax Appeals. Consequently, the railroads filed simultaneous appeals, one to the Board of Tax Appeals, pursuant to I.C. § 63–3811, and another to the district court of Ada County, pursuant to I.C. § 67–5215 of the state administrative procedure act.

In the district court the railroads also sought a declaratory judgment to clarify the appropriate appeal procedure from the decision of the Tax Commission. Further relief was sought in the event the district court should determine that the Board of Tax Appeals did not have jurisdiction to proceed. Under the declaratory judgment cause of action, an expedited trial was held and thereafter the district court ruled that an appeal *de novo* lies to the Board of Tax Appeals from an order of the Tax Commission valuing railroad properties, and further determining that the Board of Tax Appeals may properly "substitute its judgment" for that of the Tax Commission regarding the

proper value to be placed upon the operating property of the railroads. The district court determined that while the Tax Commission is charged by law, I.C. § 63–701, with determining the value of the railroads' operating property and allocating such value to the various counties, nevertheless, the legislature delegated to the Board of Tax Appeals the quasi-judicial function of reviewing that administrative determination by the Tax Commission, I.C. § 63–3811, and hence the railroads were permitted to appeal the Commission's determination to the Board of Tax Appeals.

The essence of the case presented here is determination of the proper avenue of appeal which *may* be pursued by a utility taxpayer who is dissatisfied with the Commission's valuation of the taxpayer's statewide operating property. The trial court held and the railroads argue here that such an appeal must be taken pursuant to I.C. § 63–3811. That statute provides:

"63–3811. Appeal from determination of tax liability.—Appeal from statewide valuations.—Taxpayers may, within the period herein provided and by following the procedures herein required, appeal to the board of tax appeals from a final determination of any tax liability, including those pursuant to sections 63–401, 63–2210, 63–3049, and 63–3632. County assessors may appeal to the board from valuations of property made on a statewide basis by the state tax commission, or allocation of such value."

The Tax Commission on the contrary asserts that I.C. § 63–3811 is not applicable to a review or appeal of its valuations of statewide operating property and that the sole avenue of review lies through the district court, pursuant to I.C. § 67–5215. That statute provides the general mechanism for review of final decisions of various administrative agencies of the State of Idaho unless other means of review are provided by law and states:

"(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case of an agency other than the industrial commission or the public utilities commission is entitled to judicial review under this act [administrative procedure act]. This section does not limit utilization of or the scope of judicial review available under other means of review, redress or relief provided by law...."

Both parties address a possible third avenue of review as provided by I.C. § 63–2213 which provides:

"63–2213. Taxes paid under protest—Limitation on action for recovery.—An action against a county, an officer, or officer de facto, for taxes or money paid to such county, officer, or officer de facto under protest, or seized by such officer, in his official capacity as a collector of taxes, and which it is claimed ought to be refunded, shall be commenced within sixty (60) days after such payment or seizure."

Since the respondent railroads had paid their taxes under protest to each of the counties in which operating properties were located, the railroads filed protective actions in Ada County against all the counties to which they had paid 1980 operating property taxes. I.C. § 63–2213. Operating property taxes paid under protest in 1981 were the subject of supplemental complaints filed in those protective actions. Those protective actions are presently pending and the parties, with near unanimity, essentially agree not to actively prosecute or defend until this Court has rendered a decision in the instant appeal. Here, the parties agree that I.C. § 63–2213 does not apply to centrally assessed taxpayers and urge this Court to hold that § 63–2213 does not apply to respondents; that I.C. § 63–2213 has been implicitly repealed and that the appropriate avenue of appeal is either I.C. § 63–3811 or I.C. § 67–5215.

We agree with the assertions of the parties regarding I.C. § 63–2213. I.C. § 63–701 provides:

"63–701. Operating property assessable by state tax commission.—The operating property of all public utilities and railroads and the franchises of all persons

owning, or operating as lessees, or constructing any public utility or railroad wholly or partly within this state shall be assessed for taxation for state, county, city, town, village, school district and other purposes, exclusively by the state tax commission; except land or buildings rented by a company or corporation as lessee which is used as or in connection with its business such as business offices, warehouses, service centers, moorage grounds or docks, shall be assessed to the owner by the county assessor."

That statute vests in the Tax Commission the responsibility for the assessment and valuation of railroad operating properties. Following assessment by the Commission, that amount is apportioned among the several counties, I.C. § 63–605; the amounts so apportioned are certified to the county auditors of the counties, I.C. § 63–711; and those amounts are then utilized by the county board of commissioners in making their annual tax levies, I.C. § 63–901.

Chapter 7, Title 63 of the Idaho Code relates solely to the assessment of the properties of public utilities and railroads, and one of its principal objectives was the attainment of uniformity in valuation and assessment of public transportation and utility properties which extend through more than one county and which by nature constitute unitary systems. *See Northern Natural Gas Co. v. Bender,* 208 Kan. 135, 490 P.2d 399 (1971), *cert. denied,* 406 U.S. 967, 92 S.Ct. 2408, 32 L.Ed.2d 665 (1972). That statutory procedure is clearly designed to eliminate inequalities in the assessed values of utility and railroad properties which might occur if local assessors were free to exercise individual judgment and discretion as to assessed values of utility operating property. It would make little or no practical sense to require centrally assessed taxpayers to challenge those assessments in local actions filed pursuant to I.C. § 63–2213. Further, such would tend to defeat the sought-after uniformity in the valuation and assessment of public transportation and utility properties which is statutorily mandated. I.C. § 63–2213 contemplates protest actions directed against the acts of local taxing officials in the county in which the taxes are protested, rather than officials and entities of state government, *see McManaman v. Board of Commissioners of Ford County,* 205 Kan. 118, 468 P.2d 243 (1970), and in cases of the instant type, only the Tax Commission, with its staff and attorneys, has the expertise and witness capacity to defend the propriety of the Tax Commission's methodology and assessment decisions.

■ Statutes which are *in pari materia* are to be construed together to the end that legislative intent will be effected. *Magnuson v. Idaho State Tax Commission,* 97 Idaho 917, 556 P.2d 1197 (1976); *North Idaho Jurisdiction of Episcopal Churches, Inc. v. Kootenai County,* 94 Idaho 644, 496 P.2d 105 (1972); *Janss Corp. v. Board of Equalization of Blaine County,* 93 Idaho 928, 478 P.2d 878 (1970). As stated in *Meyers v. City of Idaho Falls,* 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932):

"The rule that statutes *in pari materia* are to be construed together means that each legislative act is to be interpreted with other acts relating to the same matter or subject. Statutes are *in pari materia* when they relate to the same subject. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and so far as still in force brought into harmony by interpretation." (Citations omitted.)

It is also well settled in Idaho that where an irreconcilable inconsistency exists between statutes *in pari materia,* the latest expression of the legislature will control. *Pittam v. Maynard,* 103 Idaho 177, 646 P.2d 419 (1982); *Mickelsen v. City of Rexburg,* 101 Idaho 305, 612 P.2d 542 (1980); *Owen v. Burcham,* 100 Idaho 441, 599 P.2d 1012 (1979).

Our legislature enacted I.C. § 63–3811 in 1969, clearly a later legislative enactment than I.C. § 63–2213. I.C. § 63–3811 provides a specific avenue through which a statewide assessment of railroad operating property may be appealed. We therefore hold that I.C. § 63–3811 has implicitly repealed I.C. § 63–2213 to the extent that it exempts from the provisions of I.C. § 63–2213 application to a taxpayer seeking review of a statewide valuation of utility or railroad operating property made by the Tax Commission.

The Commission first suggests that I.C. § 63–3811 provides only that an appeal will lie to the Board of Tax Appeals "from a *final determination of any tax liability,*" and since the Tax Commission's determination of assessed valuation is not a "final determination of any tax liability" no appeal lies to the Board of Tax Appeals from a Commission valuation of railroads' operating properties. We disagree.

In the enactment of I.C. § 63–3811, the legislature has provided specific guidance as to the determinations it intended to encompass within the phrase "final determination of any tax liability". Among such determinations it included those made "pursuant to sections 63–401, 63–2210, 63–3049, and 63–3632."

I.C. § 63–401 provides for the equalization of assessments of property by county commissioners, and I.C. § 63–2210 provides for appeals from decisions by the board of county commissioners relating to the valuation of property. Neither of those statutes require a "final determination" of a "tax liability," but rather deal with appeals from determinations of assessed values. Here in essence, the Tax Commission occupies the position of the county assessor or the board of county commissioners with respect to valuation and equalization decisions. Further we note the express provision in I.C. § 63–3811 authorizing county assessors to appeal to the Board of Tax Appeals from determinations of the State Tax Commission as to valuations of property made on a statewide basis. It would be incongruous for the legislature to have intended that one party to a valuation controversy (an assessor) should be allowed an appeal to the Board of Tax Appeals, but the other party to the controversy (the railroads) could not appeal to the Board of Tax Appeals. I.C. § 63–3811 and § 63–3812 are clearly statutes *in pari materia,* the former governing appeals to the Board of Tax Appeals, and the latter governing appeals from the Board. I.C. § 63–3812 specifically provides for appeals from decisions by the Board to the district court "in the case of a taxpayer whose taxes are assessed on a statewide basis." That language clearly indicates a legislative contemplation that such a taxpayer "assessed on a statewide basis" should be first able to appeal to the Board of Tax Appeals from a statewide evaluation by the Tax Commission, otherwise the statutory language is totally superfluous. Statutes must, if possible, be construed to give force and effect to every part thereof. *University of Utah Hospital and Medical Center v. Bethke,* 101 Idaho 245, 611 P.2d 1030 (1980); *Norton v. Department of Employment,* 94 Idaho 924, 500 P.2d 825 (1972); *Stucki v. Loveland,* 94 Idaho 621, 495 P.2d 571 (1972).

The Tax Commission argues that the doctrine of *expressio unious est exclusio alterius* should be applied in that the legislature's specific authorization allowing an appeal to the Board of Tax Appeals by a county assessor impliedly excludes all others such as the railroad taxpayers here. It is argued that the designation in a statute excludes all things not so specified. Such is not an unimpeachable rule of law, merely an expression that the courts will adhere to the literal language of the statute in determining legislative intent. *Noble v. Glenns Ferry Bank, Ltd.,* 91 Idaho 364, 421 P.2d 444 (1966). Here a legislative intent to exclude a taxpayer from the same right of appeal does not clearly appear from a literal reading of the statute, and to give the statute the interpretation sought by the Tax Commission would controvert what we deem to be legislative intent.

Hence, we hold that the legislature intended I.C. § 63–3811 to be the remedy

whereby taxpayers such as the railroads may obtain a review of the Commission determination of the valuation of operating property.

The Tax Commission next asserts that since the Commission is a constitutional entity entrusted with constitutional duties, the legislature is prohibited from taking away its constitutional duties by authorizing an administrative agency, such as the Board of Tax Appeals, the power to review orders of the Commission relating to the valuation of railroads' operating property.

The constitutional predecessor of the State Tax Commission was the State Board of Equalization, which was constitutionally created in 1890 by Art. 7, § 12 of the Idaho Constitution, which provided:

"State board of equalization.—There shall be a state board of equalization, consisting of the governor, secretary of state, attorney general, state auditor, and state treasurer, whose duties shall be prescribed by law. The board of county commissioners for the several counties of the state, shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county, under such rules and regulations as shall be prescribed by law."

The above provision of the original constitution was amended in 1944, and in pertinent part presently provides:

"There shall be a state tax commission consisting of four (4) members ... The duties heretofore imposed upon the state board of equalization by the Constitution and laws of this state shall be performed by the state tax commission and said commission shall have such other powers and perform such other duties as may be prescribed by law, including the supervision and coordination of the work of the several county boards of equalization."

The Tax Commission asserts that the language of the 1944 amendment stating that the Tax Commission shall perform the "duties heretofore imposed upon the state board of equalization by the Constitution and laws of the state" somehow "constitu-tionalized" the statutory duties previously performed by its predecessor, the State Board of Equalization. It is asserted that among those duties so incorporated in the constitution, was the assessment of operating properties of public utilities, railroads and car companies. It is argued that the legislature may not empower an administrative agency to interfere with or substitute its judgment for the discretionary determinations of constitutional entities in the performance of their constitutional duties, and hence the Board of Tax Appeals may not interfere with nor substitute its judgment for the Tax Commission's statewide valuations of the railroads' operating property.

In an early case, this Court stated: "The state board of equalization [state tax commission] is wholly the creature of the law. It has no power or authority except that which is given by [statute]." *Orr v. State Board of Equalization,* 3 Idaho 190, 199, 28 P. 416, 419 (1891). *Accord Kootenai County v. State Board of Equalization,* 31 Idaho 155, 169 P. 935 (1917); *Northwest Light and Water Co. v. Alexander,* 29 Idaho 557, 160 P. 1106 (1916). Those cases which were decided prior to the 1944 amendment to Article VII, § 12, of the Idaho Constitution hold that the Tax Commission's predecessor, the State Board of Equalization, had no inherent constitutional duties, express or implied, albeit it was a constitutional entity. The Tax Commission relies heavily upon the sole exception to the great weight of the pre-amendment case law, *i.e., Blomquist v. Board of County Commissioners,* 25 Idaho 284, 137 P. 174 (1913). The Court framed the precise question there presented as "Has the tax commission power to compel a county board of equalization to adopt its views in equalizing the value of certain property for taxation?" *Id.* at 291–92, 176. The Court there had for consideration legislation creating a state tax commission with powers which could have been interpreted as being fully coextensive with those of the constitutionally-created state and county boards of equalization. The Court in *Blomquist* construed the legislation as merely

creating an "advisory board", refused to strike it down on constitutional grounds, and *intimated* that the state board of equalization had certain implied constitutional duties and powers. We hold those suggestions were dicta, unnecessary to the decision, and therefore not authoritative.

As aforesaid, Art. VII, § 12 of the Constitution was amended in 1944 to accomplish certain purposes, *i.e.,* the name of the entity was changed from the State Board of Equalization to the State Tax Commission; the State Board of Equalization was comprised of five elected officials: the governor, secretary of state, attorney general, state auditor and treasurer—while the State Tax Commission is composed of members appointed by the governor for six-year terms; the Tax Commission was directed to continue the duties previously performed by the State Board of Equalization and perform such other duties as the legislature might in the future impose upon it, and finally, an explicit duty of the Tax Commission was stated to include "the supervision and coordination of the work of the several county boards of equalization." We find nothing in that amendment which by necessary implication raises the pre-existing statutory duties of the state board of equalization to the status of constitutional duties of the Tax Commission.

When the people of our state have deemed it necessary to impose specific duties upon constitutional entities, they have done so in a manner which is clear and our constitution contains many examples. *See* Art. 9, § 10 (duties of the regents of the University of Idaho); Art. 9, § 7 (duties of state board of land commissioners); Art. 9, § 2, (duties of the state board of education). The 1944 amendment to Art. VII, § 12, provides an explicit constitutional duty placed upon the Tax Commission, *i.e.,* "supervision and coordination of the work of the several county boards of equalization."

■ We hold, therefore, that the predecessor of the State Tax Commission [state board of equalization] was not entrusted with any constitutional duties other

than to perform such duties as were imposed upon it by the legislature. The 1944 amendment to Art. VII, § 12 creating the State Tax Commission, merely directed it to continue to perform the *statutory* duties imposed upon its predecessor and, in addition, was given the constitutional duty of "supervision and coordination of the work of the several county boards of equalization." We conclude therefore that the Tax Commission's duty to conduct statewide assessments of the railroads' operating properties is statutory in nature and not constitutional. The legislature has plenary power in all matters of legislation except as prohibited or limited by the Constitution. *Utah Oil Refining Co. v. Hendrix,* 72 Idaho 407, 242 P.2d 124 (1952); *see also McGoldrick v. Benewah County,* 54 Idaho 704, 35 P.2d 659 (1934).

■ The legislature, therefore, is free to amend or repeal its enactments and we find no provisions in the constitution prohibiting it from creating a Board of Tax Appeals empowered to review the Tax Commission's assessments of the railroads' operating property, and hence hold that the legislative authorization that the Board of Tax Appeals has the power to review the Tax Commission's assessments of railroads' operating properties is not prohibited by the constitution.

Finally, the Tax Commission argues that public policy considerations militate against the result sought by the railroads and which we have reached today. It is asserted that multiple *de novo* hearings on the operating property assessments, first before the Tax Commission, second before the Board of Tax Appeals under I.C. § 63–3811, and finally before the district court under I.C. § 63–3812, will result in inefficiency, delay, and unnecessary cost. The Commission also urges that we should require utilities and railroads to present their proof in the first instance to the Tax Commission and limit a review of its valuation decisions to a review of the record made before the Tax Commission.

The Tax Commission emphasizes that since its valuation decisions are utilized by

the various counties to set levies and fund budgets, multiple *de novo* appeals will lead to confusion in the fiscal affairs of local government. While, for the sake of argument, we may concede the validity of the Commission's argument from a practical standpoint, these theories and arguments are more appropriately addressed to the legislature than to this Court. We have held the legislature is not prohibited from mandating *de novo* appeals from Tax Commission's orders of statewide assessments and this Court should not substitute its judgment of what is good or bad administrative management for that of the legislature. We note further that the legislature has not granted *carte blanche* to railroads and utilities in the area of presentation of proof before the Tax Commission. Statements from railroads and utilities showing all property subject to assessment must be furnished to the Tax Commission along with any other information germane to the assessment of their operating properties. I.C. §§ 63–704, 63–705 and 63–706. The Tax Commission may compel attendance at hearings for the purpose of securing evidence, facts and information enabling it to value and assess operating properties. I.C. § 63–708. Information not so disclosed to the Tax Commission may result in an arbitrary assessment of operating property which may not be questioned thereafter. I.C. § 63–709. Hence, while the Tax Commission's arguments relating to practical consequences may have some validity, they are not without question.

Although we are urged to here determine the time within which an appeal must be filed before the Board of Tax Appeals from a final decision of the Tax Commission, we decline to do so. The Board of Tax Appeals is empowered to publish rules and regulations governing procedure before it, I.C. § 63–3808, and pursuant to that power the Board of Tax Appeals has so enacted its Rule 5. We deem it appropriate that absent a showing of prejudice or due process violation, the Board should be left the interpretation and application of its own rules.

The judgment of the trial court is affirmed. Costs to respondents.

McFADDEN and DONALDSON, JJ., concur.

(McFadden, J., registered his vote prior to his retirement on August 31, 1982.)

BAKES, Chief Justice, dissenting, in which BISTLINE, Justice, joins:

The original Art. 7, § 12, of the Idaho Constitution gave the assessing function of real property in the State of Idaho first to the county assessors and county boards of equalization, followed by a review by the State Board of Equalization. The Idaho Supreme Court in *Blomquist v. Board of County Comm'rs,* 25 Idaho 284, 137 P. 174 (1913), held that it would be unconstitutional for the legislature to give any of that assessing or equalizing function to the original State Tax Commission, and said that the legislature did not have the power to remove those assessing and equalizing functions from the constitutional bodies. Subsequently in 1944, Art. 7, § 12, of the Constitution was amended permitting the legislature, if it so desired, to authorize the State Tax Commission to perform the assessing or equalizing function. Pursuant to that constitutional authorization, the legislature created the present State Tax Commission and gave it the authority to assess and equalize the ad valorem assessments of railroads and other property. Subsequently, in 1969, the legislature created the Board of Tax Appeals and attempted to permit a *de novo* review of decisions of the State Tax Commission by the board, which in effect was a legislative attempt to give the constitutional power of assessing and equalizing of ad valorem taxes to a body other than that spelled out in Art. 7, § 12, of the Constitution. That is precisely what this Court ruled in the *Blomquist* case that the legislature had no authority to do. The Board of Tax Appeals in the present case stands in exactly the same position as the old Tax Commission in 1913 at the time of the *Blomquist* case. Our decision today should be the same as the *Blomquist* deci-

sion was then. There should be no *de novo* review by a legislative entity of the ad valorem tax decisions of the constitutional entities provided for in Art. 7, § 12, of the Idaho Constitution.

Consequently, I dissent.

BISTLINE, Justice, dissenting.

In addition to joining the views expressed in the opinion of Justice Bakes, I write briefly to disapprove of the Court's denigration of *Blomquist* as obiter dicta. My reading of that case brings me to the conclusion that it is not at all dicta, but an appellate court's comprehensive review of the then existing scheme for assessing and equalizing of taxes throughout the state. Such an appellate court review is not unusual and is a proper judicial exercise when circumstances so require. Examine, for instance, the language of the eminent jurist, Justice Ailshie, in his concurring opinion:

> "It seems to me *from an examination of the whole act creating the tax commission and the simultaneous act embodying the revenue laws,* that the legislature had no intention of conferring any such power on the commission as is claimed for it. The revenue law was passed and approved the same day as the tax commission act, and must be considered and construed as a simultaneous act under the same rule of construction as if a part of this act. When we so consider it, there can be no doubt but that the legislature intended that the assessor and the county board of equalization and state board of equalization should still retain the same powers and exercise the same functions that have heretofore been exercised by them. Indeed, the revenue act specifically so provides." *Blomquist v. Board of County Commissioners,* 25 Idaho 284, 306, 137 P. 174, 182 (1913) (emphasis added).

I also suggest that note be taken of the Colorado Supreme Court's assessment of *Blomquist* made in the *Bi-Metallic* case which came under discussion in the recently decided case of *Idaho State Tax Commission v. Staker,* 104 Idaho 238, 658 P.2d 350 (1982), and a portion of which is set forth in the dissenting opinion filed in that case. Commentators down the line may conclude that the Court in that case might have been influenced in a different direction upon a close reading of both *Bi-Metallic* cases, the Colorado court's found at 138 P. 1010 at 1011 (Colo.1914), and the High Court's at 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).