727 P.2d 1222 (1986)
111 Idaho 1222
Linda C. BARRINGER, in her individual capacity, and Linda C. Barringer, as guardian ad litem for William C. Barringer, Jr., Plaintiff-Respondent,
v.
STATE of Idaho, Defendant-Respondent.
STATE of Idaho, Third Party Plaintiff-Respondent,
v.
STACK STEEL & SUPPLY CO., a Washington corporation, Third Party Defendant-Respondent, and
State of Washington, Department of Labor & Industries, Intervenor-Appellant.
Linda C. BARRINGER, in her individual capacity, and Linda C. Barringer, as guardian ad litem for William C. Barringer, Jr., Plaintiff-Appellant,
v.
STATE of Idaho, Defendant-Respondent.
STATE of Idaho, Third Party Plaintiff-Respondent,
v.
STACK STEEL & SUPPLY CO., a Washington corporation, Third Party Defendant-Respondent, and
State of Washington, Department of Labor & Industries, Intervenor-Respondent.
Linda C. BARRINGER, in her individual capacity, and Linda C. Barringer, as guardian ad litem for William C. Barringer, Jr., Plaintiff-Respondent,
v.
STATE of Idaho, Defendant-Appellant.
STATE of Idaho, Third Party Plaintiff-Appellant,
v.
STACK STEEL & SUPPLY CO., a Washington corporation, Third Party Defendant-Respondent, and
State of Washington, Department of Labor & Industries, Intervenor-Respondent.
Nos. 15438-15440.
Supreme Court of Idaho.
October 21, 1986.
*1223 Clyde G. Nelson, Soda Springs, and Dennis P. Conner, Great Falls, Mont., argued as amicus curiae.
Danny K. Radakovich, Lewiston, for plaintiff-respondent Linda C. Barringer.
Jeffrey A. Strother, and C. Wagahoff Dale, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendant-respondent and third party plaintiff-respondent State of Idaho.
No appearance on rehearing was made on behalf of intervenor-appellant State of Wash. or third party defendant-respondent Stack Steel.
1985 OPINION NO. 143, ISSUED SEPTEMBER 25, 1985, IS HEREBY WITHDRAWN, AND THIS OPINION IS SUBSTITUTED THEREFOR.
PER CURIAM:

HISTORY
William R. Barringer, Sr., was killed January 23, 1978, when the truck he was operating for Stack Steel & Supply Co., a Washington-based corporation, drove off the end of a run-away truck ramp on the Lewiston grade. The complaint in this case, filed January 18, 1980, by Barringer's wife, Linda, and son, William, Jr., alleges inter alia that the State of Idaho was negligent in the design, construction and maintenance of the run-away truck ramp.
At the time of the accident Mr. Barringer was, and his wife still is, a Washington resident. There is no dispute that at the time of the accident Mr. Barringer was in the course of employment with Stack Steel. As a result of Mr. Barringer's death, Washington's Department of Labor & Industries has paid, and continues to pay on behalf of the employer, worker's compensation benefits to Mr. Barringer's beneficiaries, Linda and William, Jr. These benefits are being paid pursuant to Washington's workers' compensation law.
Following commencement of the action in 1980, the State of Idaho, on March 12, 1982, filed a third party complaint against Stack Steel. The complaint alleged that Stack Steel committed tortious acts within the State of Idaho which were the direct and proximate cause of Mr. Barringer's death, and the state asserted claims for indemnification and contribution.
In its answer to the third party complaint, Stack Steel raised as an affirmative defense the fact that workers' compensation *1224 benefits had been paid under Washington's workers' compensation law and that under Washington law Stack Steel was immune from any indemnification or contribution.
On September 8, 1982, the State of Idaho filed a motion for partial summary judgment, requesting the district court to (1) declare that Idaho, not Washington, law governs with respect to the third party complaint for indemnification and contribution; and (2) limit Mrs. Barringer's claim of damages to $100,000 as provided by I.C. § 6-926.
In February, 1983, the district court held that Idaho, not Washington, law should determine the issues of contribution and indemnification. Motions for reconsideration were filed by Stack Steel and Mrs. Barringer.
On March 15, 1983, the Washington Department of Labor, having paid worker's compensation benefits to Mrs. Barringer, filed a notice of statutory lien pursuant to R.C.W. 51.24.080(2), claiming a right of reimbursement for worker's compensation benefits paid from any settlement or award recovered in the case. The State of Idaho moved to strike the department's claim of lien. On October 28, 1983, the Washington Department of Labor filed a complaint to intervene in the pending suit and immediately joined the motions for reconsideration filed by Stack Steel and Mrs. Barringer. The department argued that Washington workers' compensation law should be applied with respect to both the issues of indemnity and contribution and its right to reimbursement.
On November 18, 1983, the district court denied the motions for reconsideration and granted the State of Idaho's motion to strike the department's claim of lien. The district court held that the Washington Department of Labor's right to reimbursement from any judgement or settlement rendered in favor of Mrs. Barringer also should be determined as though the department were subrogated to Mrs. Barringer's recovery pursuant to I.C. § 72-223(3). Finally, the district court refused to grant the State of Idaho's request to limit Mrs. Barringer's claim of damages to $100,000, holding that limitation of the state's liability under I.C. § 6-926 does not apply until the state's liability has been determined at trial.
On December 12, 1983, the district court granted permission to appeal its November 18, 1983, order and on February 13, 1984, this Court granted leave to the department, Mrs. Barringer, and the State of Idaho to file notices of appeal. I.A.R. 12. The department's appeal is No. 15438; Mrs. Barringer's appeal is No. 15439; and the State of Idaho's appeal is No. 15440.

I

THE WASHINGTON DEPARTMENT OF LABOR & INDUSTRIES' APPEAL
Two issues need to be resolved with respect to the Department of Labor's appeal. They are: (1) whether Washington or Idaho law governs the State of Idaho's claim of contribution and indemnification, and (2) whether Washington or Idaho law governs the Department of Labor's right to reimbursement for workers' compensation benefits paid from any settlement or award recovered in this case. We hold that on both issues Idaho law applies and, therefore, affirm the district court.
The Washington Department of Labor & Industry has appealed the district court's ruling that Idaho law should apply to the State of Idaho's claim for contribution for the alleged negligence of Stack Steel, the employer, and the Washington department's claim for reimbursement of worker's compensation benefits received by plaintiff. Idaho law allows a third party tortfeasor to defend on the basis that the employer was concurrently negligent, and the third party is allowed a limited right of contribution by a setoff against damages reflecting the employer's negligence. This offset cannot exceed the amount of the worker's compensation benefits provided by the employer and surety. The employer's and surety's right of reimbursement from the third party recovery is reduced by *1225 an amount equal to the offset. See I.C. § 72-209(2), -223; Schneider v. Farmers Merchant, Inc., 106 Idaho 241, 678 P.2d 33 (1983); Pocatello Industrial Park Co. v. Steel West, Inc., 101 Idaho 783, 621 P.2d 399 (1980); Tucker v. Union Oil Co. of Calif., 100 Idaho 590, 603 P.2d 156 (1979); Liberty Mutual Ins. Co. v. Adams, 91 Idaho 151, 417 P.2d 417 (1966). Washington worker's compensation statutes and case law allow no negligence to be attributed to the employer and no reduction in the surety's right to reimbursement from the third party recovery for worker's compensation benefits paid to the injured employee. See Glass v. Stahl Specialty Co., 97 Wash.2d 880, 652 P.2d 948 (1982); Kelly v. Howard S. Wright Const. Co., 90 Wash.2d 323, 582 P.2d 500 (1978); Seattle First Natl. Bank v. Shoreline Concrete Co., 91 Wash.2d 230, 588 P.2d 1308 (1978). Thus, Idaho law conflicts with Washington law, and we must determine which state's law should properly be applied to this dispute.
This exact conflict of law problem was addressed in our recent unanimous opinion of Runcorn v. Shearer Lumber Products, Inc., 107 Idaho 389, 690 P.2d 324 (1984), which had substantially identical facts to the present case. In both cases a Washington employer was doing business in Idaho through its employee. In both cases the employee was injured in Idaho due to the alleged negligence of an Idaho third partyin Runcorn, the third party was Shearer Lumber Products; in this case it is the State of Idaho. In both cases the third party defended claiming that the employer was concurrently negligent. In both cases the plaintiffs had received worker's compensation benefits paid by the Washington Department of Labor & Industry as surety on behalf of the Washington employer. In both cases the department surety argued that Washington law should apply barring any negligence to be attributed to the employer and no reduction in the surety's right of reimbursement from the tort recovery. However, in Runcorn Idaho law was determined to be applicable.
In the present case, the employer and surety moved to dismiss the third party complaint filed by the State of Idaho based upon the employer's claim that Washington law applied and that, accordingly, no contribution and setoff was allowable. The district court held that Idaho law applied and denied the motion to dismiss. The department surety first argues that a reciprocity agreement between Washington and Idaho state agencies binds this Court to apply Washington law. However, this issue was disposed of in Runcorn:
"The document merely agrees as to who will provide coverage and who will pay benefits for workers crossing the state line. To interpret the reciprocity agreement as urged by plaintiff would require Washington tort law, as well as all aspects of Washington's workmen's compensation laws, to be applied by an Idaho court in a tort action against an Idaho resident for a tort occurring in Idaho. We do not believe that the reciprocity agreement applies to third party tort actions, or that the legislature gave such authority to the Idaho Industrial Accident Board...." 107 Idaho at 397, 690 P.2d at 332. (Emphasis added.)
The department surety next argues that a conflicts of law analysis requires the application of Washington law as the correct choice of law. Runcorn also disposed of this issue by considering the policies and interests which underlie the different approaches of the Washington and Idaho statutes concerning the Washington employer's right of limited immunity versus a third party's right in Idaho of contribution from concurrent tortfeasors. Runcorn discussed the basic fairness of Idaho's approach as opposed to the extreme approaches taken by other states, including Washington. Further noted in Runcorn was that Washington's interest in employer immunity is substantially protected under Idaho law since the employer cannot be held liable beyond the amount already paid to the injured employee in worker's compensation benefits. An injured Washington employee, such as the plaintiff in *1226 this case, is also protected under Runcorn from a double deduction from tort recovery by the Idaho rule that the offset to the third party recovery also reduces the employer's surety's right to reimbursement from the recovery. Therefore, neither the Washington employer nor the employee are affected by the application of Idaho law. Runcorn also considered the significant contacts[1] which Idaho had with the parties and action. Runcorn ultimately concluded that "Idaho has strong interests and policies which would be undermined by the application of the less equitable Washington laws. Therefore, we choose to apply the law of Idaho, the forum state." Runcorn, 107 Idaho at 397, 690 P.2d at 332. We hold that Runcorn is controlling on the present issue. This is not a "different set of circumstances [in which] we might choose to apply Washington law...." Id.
This Court has considered a conflicts of law issue in a case subsequent to Runcorn and noted the factors and significant contacts as set out by the Restatement (Second) of Conflict of Laws §§ 6, 145. See Johnson v. Pischke, 108 Idaho 397, 700 P.2d 19 (1985). Johnson quoted from Weintraub, Commentary on the Conflict of Laws § 6.8, pp. 277-78 (1980), which teaches that the contacts between each state should not be mechanically counted; rather that the conflict between the states' laws should be resolved rationally based upon the interests and policies of each state. Runcorn's analysis was substantially similar to the Johnson v. Pischke approach by considering the underlying policies and interests and the significant contacts of Washington and Idaho in concluding that Idaho law should apply.
The application of Idaho law in this case enhances the predictability and certainty of the law. Other states such as Illinois and New York take the opposite extreme from Washington. In those states an employer is allowed to be sued for complete indemnity and contribution with no limited liability. Doyle v. Rhodes, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984); Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972). If this Court concluded that Washington law should apply to these facts, the Court would also have to apply the laws of Illinois or New York or another foreign jurisdiction's law in the next case, depending on the trucking employer's and employee's domicile. Such a choice of laws would result in one Idaho third party tortfeasor's right of contribution being unlimited while another's would be non-existent. Idaho's significant interests would be at the mercy of other jurisdictions' less equitable approaches to the problem, and the outcome of each case would vacillate between extremes, depending on the happenstance of where the truck owner and employer are domiciled. Therefore, certainty and predictability are better served with Idaho's law being applied as we held in Runcorn.
Of the many approaches which have been proposed and followed in attempting to resolve the conflicting states' interests and policies identified as factors under the Restatement (Second) of Conflicts of Laws, the analysis and choice of law in Runcorn and the present case are supported by the majority of authorities, which set forth a "comparative impairment," "weighing of interests," or "better law" analysis. See, e.g., Baxter, Choice of Law and the Federal System, 16 Stan.L.Rev. 1, 22 (1963); Horowitz, The Law of Choice of Law in CaliforniaA Restatement, 21 U.C.L.A.L. Rev. 719, 748-58 (1974); R. Leflar, American Conflicts Law, § 107 (3d ed. 1977); Currie, The Constitution and the Choice of Law: Governmental Interests and the Judicial Function, 26 U.Chi.L.Rev. 9 (1958).
Idaho's significant contacts in the present case are that Idaho was the place where the injury occurred, the place where the negligence and contributory negligence *1227 of the third party, the employer, and the employee allegedly occurred, and the place of domicile of the third party, the State of Idaho. As stated in Johnson v. Pischke, 108 Idaho 397, 402, 700 P.2d 19, 24 (1985), of the contacts to be considered, "none has a more significant relationship to the issue before us than Idaho, the place of the injury." Flowing from these contacts are Idaho's significant and important interests that third party tortfeasors be allowed a limited right of contribution through an offset reflecting the employer's concurrent negligence, if any. Idaho has further interests that out-of-state employers do not negligently operate or maintain their trucks in Idaho and that those employers through their sureties should not profit from their own negligence.
Washington's contacts are that it is the domicile of the employer and employee. Flowing from these contacts is the interest that the employer have no liability and be completely immune except to provide worker's compensation benefits to injured employees. Washington also has an interest in having injured employees adequately compensated and further having safe working conditions.
The application of Washington law would result in Washington's interests being enhanced; however, Idaho's interests would be completely undermined and unrecognized. The third party tortfeasor would get no contribution whatsoever for the employer's negligence, and the employer through its surety would be allowed to profit from its own negligence by complete reimbursement for the worker's compensation benefits paid. On the other hand, the application of Idaho law would result in Idaho's interests being served and Washington's interests being substantially although not totally protected. The Washington employer will still be accorded substantial immunity since it will not be held liable for any additional amount beyond that already paid in worker's compensation benefits. Washington employees or their heirs will receive the same compensation regardless of which state's law is applied. Only the Washington surety, who will not be permitted to benefit by the employer's wrong, will suffer. We conclude that Idaho as the forum state has the most significant interest in having its law applied under a "comparative impairment," "weighing of interests" or "better law" analysis.
At trial, if Stack Steel is determined to have been negligent, then the State of Idaho should be allowed an offset reflecting that percentage of comparative negligence, not to exceed the amount of worker's compensation benefits paid to the plaintiffs.[2] The department surety's right to reimbursement shall be reduced by an equal amount. Runcorn v. Shearer Lumber Products, Inc., supra.

II

MRS. BARRINGER'S APPEAL
Mrs. Barringer also appeals the district court's decision that Idaho law should govern the issues of contribution and indemnification, as well as reimbursement. The thrust of her appeal is that application of Idaho law may result in a reduced recovery by her against the State of Idaho. Our conclusions reached in the Department of Labor's appeal effectively answers the issue raised in the Barringer appeal. Mrs. Barringer will not be subjected to a double setoffone by the third party defendant, and a second by the employer-surety's subrogated right. Runcorn v. Shearer Lumber Products, Inc., supra. Therefore, we need not address further the issue raised by Mrs. Barringer.

*1228 III

THE STATE OF IDAHO'S APPEAL

A.
The State of Idaho has filed an appeal from the trial court's failure to grant its motion for partial summary judgment. The first issue raised by the State of Idaho is whether, if both Mrs. Barringer and her minor son have separate wrongful death claims against the State of Idaho, is each entitled to a separate $100,000 recovery against the state? The issue, as presented by the state, focuses around I.C. § 6-926's "per person" limitation, raising the question of whether the word "person" refers to the injured person or the person or persons filing claims against the state. The version of I.C. § 6-926 in effect at the time of the accident clearly provides the answer to this question.
Subsection (b) dealing with bodily or personal injury or death provides:
"The combined, aggregate liability of a governmental entity ... for damages, costs and attorney fees under this act on account of bodily or personal injury or death of any person, shall not exceed and is limited to $100,000 subject to the further limitation of $300,000 in any one accident or occurrence arising out of any occurrence wherein two or more persons sustain such injury and/or death .... "Limits of liability above specified shall not be increased or altered by the fact that a decedent on account of whose death a wrongful death claim is asserted hereunder left surviving him or her more than one person entitled to make claim therefor nor shall the aggregate recovery exceed the single limit provided for injury or death to any one person in those cases in which there is both an injury claim and a death claim arising out of the injury to one person, the intent of this section being to limit such liabilities and recoveries in the aggregate to one limit only." (Emphasis added.)
It is clear from the statute that the $100,000 limitation for "personal injury or death of any person" refers to the person injured or killed, and not the person claiming compensation as an heir. Cf. Packard v. Joint School Dist. No. 171, 104 Idaho 604, 661 P.2d 770 (Ct.App.1983). This is further emphasized by the second paragraph set out above which clearly states that the $100,000 limit of liability for the death of "any person" "shall not be increased or altered by the fact that a decedent on account of whose death a wrongful death claim is asserted hereunder left surviving him or her more than one person entitled to make claim therefor...." We hold that in this case the limit of liability of the State of Idaho as a result of any wrongful death of Mr. Barringer is $100,000, and that $100,000 limitation is not "increased or altered by the fact [the] decedent ... left surviving him ... more than one person entitled to make claim therefor...." Accordingly, the trial court erred in failing to grant the state's motion for partial summary judgment on this issue.

B.
The state urges on appeal that I.C. § 6-926 requires that the trial court limit plaintiff's claim before the jury to $100,000, that is, that the court instruct the jury that its maximum verdict is limited to $100,000.
Barringer responds that she is entitled to present her total damages to the jury for fixing a verdict and that it is for the court, following verdict, to limit its judgment entered against the State to no more than $100,000.
We note the statute is silent as to when the court shall take the action, and thus we must interpret the Tort Claims Act as a whole to determine the legislative intent.
Section 6-903(a), the core provision of the act, provides:
"6-903. Liability of governmental entities.Defense of employees.(a) Except as otherwise provided in this act, every governmental entity is subject to liability for money damages arising out of its negligent or otherwise wrongful acts or omissions and those of its employees *1229 acting within the course and scope of their employment or duties, whether arising out of a governmental or proprietary functions, where the governmental entity if a private person or entity would be liable for money damages under the laws of the state of Idaho."
Thus, subject to the exceptions and limitations which follow in later sections, the state waives sovereign immunity and submits itself to the same liability as would attach to a private person. The sole restriction which the state has imposed in the context of this case is that it will pay on more than $100,000.
Were the state's interpretation adopted, an illustration demonstrates how such would further limit the $100,000 to a lower number not stated in the statute:
Suppose the provable damages were $300,000 and the negligence of Stack Steel were assessed at 60% and that of the state at 40%, thus rendering the state's share $120,000.
Under the foregoing illustration, the state would have the verdict limited to $100,000, the court would apply 40% thereto, thus resulting in judgment being entered against the state for $40,000.
Under Barringer's view, the court would simply enter the judgment on the $120,000 verdict at $100,000. This is in keeping with legislative intent, as the limitation expressed by the legislature is $100,000, not $40,000.
Further indicative that Barringer's interpretation is in line with the legislative intent is the fact that the applicable version of the statute, where the word "claim" was used, contained the following wording:
"[T]he court shall reduce the amount to the minimum requirement unless the governmental entity has provided liability coverage in excess of the minimum requirement. In this event, the court shall reduce the amount of the claim or judgment to a sum...."
Obviously, there would be no judgment on a verdict which would need to be reduced by the court if in fact the jury were to be instructed that it would come in at no more than $100,000.
We note that the 1978 legislature amended I.C. § 6-926 by changing the words "judgment or claim" to "judgment or judgments" in the opening clause and then directing the reduction of "award or awards, verdict or verdicts, judgment or judgments," rather than "claim or judgment" as in the former wording.[3]
The language of the 1978 amendments, which was not a response to judicial interpretation and appears to reflect the then existing practice, seems to clearly reveal that legislative intent at all times was simply to place a cap on the state's liability rather than to prevent a plaintiff from demonstrating all items and amounts of damage which may have been suffered.
Accordingly, we decline the state's invitation to amend the statute by inserting a direction that the court instruct the jury to a $100,000 limitation prior to the commencement of its deliberations.
The order of the district court, to the extent that it is inconsistent with this opinion, is reversed and the cause remanded for further proceedings consistent with this Court's opinion.
Costs to appellant State of Idaho. No attorney fees allowed.
DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.
BAKES, J., concurs in Parts I, II and III(A).
*1230 BAKES, Justice, dissenting as to Part III(B):
The Court's analysis in Part III(B) is flawed. The second issue raised by the state in the second part of its appeal is whether or not the plaintiff is precluded by I.C. § 6-926 from claiming and proving more than $100,000 in damages against the State of Idaho in this case. The relevant portion of § 6-926 in effect in January of 1978, the time of the accident in the present case read as follows:
"If any judgment or claim against a governmental entity or its employee under this act exceeds the one hundred thousand dollars ($100,000) per person limited to three hundred thousand dollars ($300,000) in any one (1) accident where two (2) or more persons have claims or judgments on account of personal injury or death, the court shall reduce the amount to the minimum requirement unless the governmental entity has provided liability coverage in excess of the minimum requirement. In this event, the court shall reduce the amount of the claim or judgment to a sum equal to the applicable limits provided in the insurance policy or provided under the comprehensive liability plan." (Emphasis added.)
The contention centers around the meaning to be given the word "claim" The state contends that "claim" as used in § 6-926 is not synonymous with "judgment." Rather, the state argues that it refers to a person's demand for money damages as the basis of a cause of action against the state. In this sense "claim" is synonymous with a plaintiff's complaint and in particular the prayer for relief, wherein the plaintiff asks or demands judgment in a specified dollar amount. Thus, the state argues, Mrs. Barringer is precluded from pleading and proving more than $100,000 in damages.
Mrs. Barringer, on the other hand, contends that when the statute speaks of "judgment or claim" that the use of the word "or" signals equivalancy. In her view, "claim" is synonymous with "judgment." However, this Court has recently stated just the contrary in Sterling v. Bloom, 111 Idaho 211, 723 P.2d 755 (1986), wherein we held that when "or" is used in a statute it is in the disjunctive. "The fact that this clause is joined to the `discretionary function' clause with the disjunctive `or' demonstrates that the two clauses describe mutually exclusive conduct." 723 P.2d at 771. Further, as stated in Lynch v. State, 175 Ind.App. 111, 370 N.E.2d 401 (1977),
"`When "or" is used, it is presumed to be in the disjunctive sense' unless contrary legislative intent is clearly shown. Sutherland Stat. Construction § 21.14. Heckathorn v. Heckathorn (1938), 284 Mich. 677, 280 N.W. 79.
"If we construe `or' in its `plain, or ordinary and usual, sense' as we are bound to do, Ind. Code § 1-1-4-1; Jenkins v. Stotts (1976), [169] Ind.App. [273], 348 N.E.2d 57, it separates two different things."
Since the phrase used in § 6-926, "judgment or claim," "describe[s] mutually exclusive" documenta, Sterling v. Bloom, 111 Idaho at 227, 723 P.2d at 771, we look to other portions of the Idaho Tort Claims Act in effect at the time of the accident to determine what the word "claim" means.[1] The word "claim," as used in 6-926, is defined in 6-902(7):
"6-902. Definitions.As used in this act:
.....
"7. `Claim' means any written demand to recover money damages from a governmental entity or its employees which any person is legally entitled to recover under this act as compensation for the negligent or otherwise wrongful act or omission of a governmental entity or its employee when acting within the course or scope of his employment." (Emphasis added.) *1231 Given the definition of "claim" and the context in which "claim" is used in Section 6-926, it is obvious that "claim" as used in that section refers only to the complaint and, in particular, the prayer for relief wherein demand is made "to recover money damages from a governmental entity or its employees...." Furthermore, that "claim" as used in Section 6-926 is the equivalent of a complaint is made clear by the directive in Section 6-926 that any "claim" which exceeds the $100,000 per person limit shall be reduced "by the court" to the minimum requirement. A common definition of a complaint is a written statement of facts upon which a demand for relief (money damages) is based. Black's Law Dictionary, p. 258 (5th ed. 1979); Hughes v. Trans World Airlines, Inc., 40 Del.Ch. 552, 185 A.2d 886, 889 (1962) (complaint is a claim for relief or demand for monetary damages). Clearly, then, a complaint filed against a governmental entity under the Idaho Tort Claims Act is a "written demand to recover money damages from a governmental entity or its employees...."
To accept Mrs. Barringer's argument that "claim" is synonymous with "judgment" would render use of the term "claim" in 6-926 superfluous. Two basic rules of statutory construction are (1) when interpreting a statute, every effort should be made to give meaning to each word so as not to render any word superfluous or without meaning, University of Utah Hospital and Medical Center v. Bethke, 101 Idaho 245, 611 P.2d 1030 (1980); and (2) when an existing statute is amended it is presumed that a change was intended, Intermountain Health Care, Inc. v. Board of County Com'rs of Madison County, 109 Idaho 685, 710 P.2d 595 (1985).[2]
Either of these rules of construction would be violated by the interpretation proposed by Mrs. Barringer. It would not only render the term "claim" superfluous, but would nullify the intention expressed when the legislature subsequently amended § 6-926 removing the term "claim" altogether from the section.[3] That the amendment signaled a change in legislative intent is made clear by the fact that the amendment was accomplished by an outright repeal of former § 6-926 and enactment of a substantially new provision.
While I agree with the state that "claim" as used in § 6-926 is not synonymous with "judgment," I nevertheless do not agree with the state's argument that Mrs. Barringer should be precluded from proving a damages "claim" in excess of $100,000. No fair interpretation of § 6-926 places *1232 such strict requirements on the trial of Mrs. Barringer's action against the state. Rather, I would hold that Mrs. Barringer may produce all her evidence of damages, even in excess of $100,000, but that the district court is required to "reduce the amount [of her claim] to the minimum requirement. Since her complaint cannot exceed the minimum requirement," the court should instruct the jury concerning the law in Idaho regarding the state's liability under the Idaho Tort Claims Act which should include an appropriate instruction stating that in no event can the jury return a verdict for more than $100,000 in damages on Mrs. Barringer's claim.
BISTLINE, Justice.

ON REHEARING
After the first opinions in this case were released September 25, 1985 (found at 85 I.S.C.R. 1919), the Court granted a rehearing. Today, as I perceive the situation, part of the earlier majority opinion authored by Justice Bakes remains intact, to wit: HISTORY, Part I, and Part II. Part III of the earlier opinion for the Court, appended hereto, has been modified by deleting entirely the content of Part III.A. As to Part III.A. as now written, I have no problems, and concur. As to Part III.B. as now rewritten, it has now been substantially changed in accordance with the views expressed in my earlier opinion of a year ago, and accordingly I concur therein.
Other than as modified by the foregoing, I continue to adhere to the views set forth in Part I and Part II of my earlier opinion,[1] which were as follows:

I.A.
The majority declares that Idaho law should govern with respect to the issue of contribution or indemnification on the part of Stack Steel, decedent's employer, if it is proven at trial that it was contributorily negligent in decedent's accident. The majority relies upon this Court's decision in Runcorn v. Shearer Lumber Products, Inc., 107 Idaho 389, 690 P.2d 324 (1984), to reach this result. The reasoning in Runcorn is hardly worth such an honor.
In Runcorn, the plaintiff, a Washington resident employed by a Washington-based corporation, was injured in Idaho while on the job. The defendant was an Idaho resident. Plaintiff was injured when an employee of the defendant negligently turned on several valves inside a boiler plaintiff was cleaning. The valves, once opened, released pressurized steam that severely burned the plaintiff. Because the employer of plaintiff was a Washington-based corporation, the Washington Department of Labor and Industries paid $22,031.99 to plaintiff in worker's compensation benefits.
Plaintiff also filed suit in Idaho, and a jury returned a verdict in excess of $800,-000 to plaintiff, apportioning liability between all parties to the injury as follows: defendant 60%, plaintiff 10%, and plaintiff's employer, 30%. The jury also awarded damages to plaintiff's wife for loss of consortium.
Testimony revealed at trial that the plaintiff in Runcorn and his employer were partially responsible for plaintiff's injuries because of the manner in which plaintiff and the employer's crew were cleaning the boiler when plaintiff was injured. Thus, not only was Idaho the place of injury, but it also was the place where the negligence of all parties involved occurred.
On appeal, the issue in Runcorn was whether plaintiff's award should be reduced by the amount of worker's compensation benefits he had received. Plaintiff argued, as the Washington Department of Labor does here, that Washington worker's compensation law should apply, which bars indemnification or contribution where worker's compensation benefits have been paid out pursuant to Washington law.
*1233 The Court rejected plaintiff's arguments and, while acknowledging the conflict between Washington and Idaho law on this issue, held Idaho law to be applicable. The following is the full sum of the Court's conflict of laws analysis in leading to its decision to apply Idaho law:
It is possible that in a different set of circumstances we might choose to apply Washington law as the appropriate law when confronted by a conflict of laws. However, in this case both plaintiffs5 and defendant are Idaho residents. The tort took place in Idaho. Idaho has strong interests and policies which would be undermined by the application of the less equitable Washington laws. Therefore, we choose to apply the law of Idaho, the forum state.
5 Shortly after this cause of action was filed the plaintiffs moved to Idaho.

Runcorn, supra, at 397, 690 P.2d at 332.
While brevity and conciseness are to be applauded, something is wrong when they are achieved at the expense of adequately explaining why. To perfunctorily declare that Idaho law should apply by merely restating the facts of the case smacks of provincialism on the part of this Court.
To declare that application of Washington law would preclude application of or undermine Idaho law is merely to state the obvious, which is that we have a conflicts case. I believe all of us know that already. Such a declaration is irrelevant in determining which state's law should apply. Of course, application of Washington law would preclude application of Idaho law. The same can be said in reverse, too. Idaho's "strong interests and policies" do not justify, in and of themselves, application of Idaho lawWashington, too, has similar "strong interests and policies."
Runcorn does little to improve the field of conflict of laws analysis. In fact, Runcorn torpedoes legitimate analysis in this area of the law. This is especially borne out in light of what the majority does today. Relying upon Runcorn,[1] the majority's approach can be viewed in the conflict of laws vernacular as application of the "better law" analysis, wherein the law which is that of the forum is the "better law" with no questions asked or answered.
Even if Runcorn had been better reasoned, the majority would be unjustified in relying on it. Contrary to the majority's assertions, the facts in today's case are not identical to those found in Runcorn. First, as mentioned above, the place of injury and the place of negligence in Runcorn was Idaho, the forum state. That is not true in this case.
It must be remembered that the State of Idaho's third-party action, by which it seeks contribution or indemnification, alleges negligence on Stack Steel's part, which contributed to Mr. Barringer's death. Stack Steel, if negligent at all, is not liable for any tort to the State of Idaho. Its contribution liability, if any, derives only from its negligence to its employee, Mr. Barringer. Thus, the only place Stack Steel could have been negligent vis-a-vis Mr. Barringer is in Washington at its place of business.
The majority overlooks this crucial point. It is preposterous to argue that Mr. Barringer's negligence, if any, in driving the truck improperly, can be imputed to Stack Steel under a respondeat superior theory, when in the same breath the State of Idaho has already alleged as an affirmative defense in its answer to plaintiff-Barringer's complaint the negligence of the decedent. It is absurd to say that the state can get plaintiff's judgment reduced proportionate to the amount of decedent's negligence, and then allow the state to require Stack Steel to indemnify it for the amount of negligence in which it was responsible, which is, of course, the decedent's negligence being imputed to it. Pursuing this *1234 course allows the state to receive a double deduction in damagesa windfall if there ever was one. Such a course also ignores the fact worth repeating that the state's third-party complaint alleges negligence on the part of Stack Steel vis-a-vis the decedent. Thus, imputing decedent's negligence to Stack Steel in this third-party context would be palpably incorrect and unjust.
The only reasonable view of the pleadings is that the State of Idaho has alleged the contributory negligence of Mr. Barringer in its answer to the plaintiff's suit, and has alleged independent negligence on Stack Steel's part vis-a-vis the decedent in its third-party complaint. What is readily apparent, then, is that in no way could Stack Steel have been negligent outside its place of business: the only way in which Stack Steel could have been negligent to the decedent is in providing an improperly maintained truck, or in improperly training the decedent.
It is important to distinguish between the place of injury and the place of negligence that caused the injury. As the comments to § 145 of the Restatement (Second) of Conflict of Laws state, where the conduct causing the injury and the place of injury differ, the first factor is to be given greater weight. The facts of this case adequately reveal the reason: the place of decedent's accident was fortuitous; it could have as easily happened in Washington on a similarly steep hill. Nothing in Idaho tort law, such as contribution and indemnification, could have deterred the tragic accident from occurring in Idaho. Thus, in such cases, the place of injury should have less reason for having its law applied, whereas the place where the conduct causing the injury should have more reason for having its law apply.
This difference between Runcorn and today's case is critical and, to my mind, determinative. The majority's refusal to consider it vitiates any persuasiveness it might have had in addressing the issue of this case. The mere and only fact that the State of Idaho has alleged that Stack Steel's negligence occurred in Idaho is insignificant. Stack Steel denied this allegation. The State has not brought forth one iota of evidence in any form to substantiate its allegation. Yet, based upon this allegation, the state moved for partial summary judgment, requesting that Idaho law be held applicable.
It is amazing to witness the majority's willingness to believe in this unsubstantiated allegation in reviewing the district court's decision concerning the state's motion for summary judgment. As recently as five months ago, the same four justices in today's majority held in Theriault v. A.H. Robins, 108 Idaho 303, 698 P.2d 365, 368-69 (1985), that in a motion for summary judgment, parties cannot rest upon their pleadings, but must offer affidavits or other evidentiary materials to substantiate their position.
While Theriault spoke in terms of a party opposing summary judgment, and her duty to come forth with affidavits to oppose such a motion, it illustrates how the state's motion should have been properly treated in this case. Here we have two parties disagreeing on a vital point[2] a clearly factual disputebut the state going ahead anyway with its motion for summary judgment, relying upon its view of the facts of this case. The district court agreed with the state, and now on appeal a majority likewise agrees. Thus, the critical issue in this case has been decided in a motion for summary judgment upon a disputed factual allegationan allegation which if found later to be untrue should lead to a result opposite that reached by the majority today.
The district court no doubt will recognize at trial that if the state's allegation of negligent conduct on Stack Steel's part in Idaho cannot be proved, then the state's third-party complaint should be dismissed. *1235 As Count III of the complaint properly notes, the jurisdiction of an Idaho court over Stack Steel in this case is dependent upon Stack Steel's negligence as having been committed in Idaho. If no such negligence is found, then there is no jurisdiction over Stack Steel. Additionally, even if jurisdiction were found to exist elsewhere, Washington law should then be held to apply for the reasons I have stated and pursuant to the analysis which I will now delineate.

B.

1. The Method of Analysis.

In Johnson v. Pischke, 108 Idaho 19, 700 P.2d 19 (1985), this Court adopted and applied the "most significant contacts" analysis found in the Restatement (Second) of Conflict of Law for tort cases. Thus, my analysis is based on the Restatement's approach for determining which state's law applies.
I begin with § 184, which provides in pertinent part:
Recovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which
(a) the plaintiff has obtained an award for the injury....
It is readily apparent that Stack Steel, having provided workers' compensation benefits under Washington law to Mrs. Barringer, is immune from liability to her in light of the blanket immunity in which Washington's Industrial Insurance Act clothes its employers. Comment C to § 184, however, states that the same result is not always true when contribution and indemnification are involved:
A person who is declared immune from liability for tort or wrongful death to an injured employee or his dependents by an applicable workmen's compensation statute may nevertheless be liable for contribution or indemnity to a third person against whom a judgment in tort or wrongful death has been obtained on account of the injury. Whether he will so be held liable is determined by the law selected by application of the rule of § 173.
Thus, I turn to the rule found in § 173, which states: "The law selected by application of the rule of § 145 determines whether one tortfeasor has a right to contribution or indemnity against another tortfeasor." Section 145 states:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts are to be evaluated according to their relative importance with respect to the particular issue.
Finally, § 6 states:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

*1236 (d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.
The group of principles and factors set forth above are not to be mechanically applied; rather, they are to be analyzed and applied based upon the substantive issues they implicate. As this Court stated in Johnson, supra, in quoting Weintraub, Commentary of the Conflict of Laws, § 6.8, pp. 277-78 (1980):
Whether or not a particular contact with a state is significant for conflicts purposes cannot be known until one first knows exactly what domestic tort rules are in conflict and what the policies underlying those rules are. Only then can one intelligently "evaluate" rather than mechanically count the contacts. A dozen contacts with an occurrence may fail to give a state any interest in having its rule applied to determine consequences of that occurrence. One contact may make the policies underlying a state's rule directly and rationally applicable to the case being decided. Once each of two states has a contact with an occurrence such that each state has an interest in having a different rule applied to determine controversies flowing from that occurrence, there is a real conflict that should be resolved rationally and not by counting contacts.

2. The Analysis Applied.

I resort to § 145 to ascertain the relevant and important contacts to be applied when applying the test set forth in § 6.
Beginning with § 145(2)(a), I note that the accident giving rise to plaintiff's suit occurred in Idaho. Nevertheless, it is true that with respect to the State of Idaho's claim against Stack Steel for negligence vis-a-vis the decedent, the fact that the accident occurred in Idaho was fortuitous, as I mentioned above. This diminishes the importance of this factor.
Subsection (2)(b)the place where the conduct causing the injury occurredfavors application of Washington law. As I have pointed out, the State of Idaho's third-party action, by which it seeks contribution or indemnification, alleges negligence on Stack Steel's part, which contributed to Mr. Barringer's death. This alleged negligencethis "conduct causing the injury" must have occurred, if at all, in Washington at Stack Steel's place of business. This fact favors application of Washington law, which would be the most interested in governing conduct occurring in Washington.
Subsection (2)(c)the residence of the partiesfavors neither party materially. Stack Steel is a Washington-based corporation. The State of Idaho speaks for itself. Both parties, obviously, have an interest in having the law of their respective jurisdictions apply. The fact that Mr. Barringer was, and Mrs. Barringer is, a Washington resident, is of little importance on this issue, for determination of which law applies with respect to contribution and indemnification does not materially alter Mrs. Barringer's suit against the State of Idaho.
Subsection (2)(d)the place where the relationship between the parties is centeredfavors Washington law. At first glance this may not appear to be so, for there does not appear to be any relationship in which to center when only Stack Steel and the State of Idaho are considered. Nevertheless, upon closer inspection it is clear that the crucial relationship on this point is the one between Stack Steel and Mr. Barringer. Again, the State of Idaho's claim needs to be reviewed. The State's claim for contribution or indemnification is grounded in its allegation that Stack Steel was negligent toward the decedent, Mr. Barringer. That relationship was centered in Washington.
I am cognizant that it is the accident in Idaho which brings the parties before us today. Nevertheless, I cannot emphasize enough that the State's claim is for contribution. *1237 Stack Steel, if negligent at all, is not liable for any tort to the State of Idaho. Its contribution liability, if any, only derives from its negligence to its employee, Mr. Barringer, and in this context the relationship's focal point is Washington.
Therefore, with respect to the issue of employer immunity from contribution liability, the factors enumerated in § 145 favor application of Washington law. As the factors set forth in § 145 indicate, the contribution and indemnification issue depends upon the relationship and conduct between Stack Steel and its employee, Mr. Barringer, which relationship was centered in Washington. With the above said and done, the contacts discussed need to be considered in light of the choice-of-law principles of § 6.
I begin with subsection (2)(a)the needs of the interstate system. Comments to this subsection state that the issues raised by this factor include the harmonious relations between states, the facilitation of commercial intercourse between states, and the adoption of the same choice of law rules by the states.
With respect to the first two issues specified, I find the first one to be of little consequencethe interests of each state, which I will describe more fully below, cannot be harmoniously accommodated. The second issuepromoting interstate commercial activityweighs in favor of applying Washington law. A Washington employer required under Washington law to pay set premiums, does so with the expectation that should worker accidents arise, they will be completely compensated for pursuant to the Industrial Insurance Act, with there being no chance of any suit or third-party action brought against it. Should this expectation be eliminated because a worker, although paid worker's compensation benefits under Washington law, is injured in another state, the employer may be less inclined to engage in such interstate business (where benefits will be paid under Washington law, affecting the employer's premiums, even though injury occurs out of the state). At the least, the employer may decline to pay premiums to cover its employees' activities outside Washington. While these reasons are not of paramount significance, they do militate toward having Washington law apply.
With respect to the third issue mentioned, there is a dearth of case law on this topic, primarily because a great majority of the states have judicially held or statutorily declared that an employer whose concurring negligence contributed to an employee's injury cannot be sued directly or joined by a third party as a joint tort-feasor, whether under contribution statutes or at common law. 2A A. Larson, The Law of Workmen's Compensation, §§ 76.20, 76.81.[3] Hence, the possibility that this conflict of law between allowing or not allowing contribution will arise has been minimal. I have, however, found one case directly on point.
In Elston v. Industrial Lift Truck Co., 420 Pa. 97, 216 A.2d 318 (1966), a Pennsylvania worker brought an action in a Pennsylvania court against a Pennsylvania manufacturer of a lift truck for damages incurred while in the course of employment. The worker was injured in New Jersey, and workers' compensation benefits were paid pursuant to New Jersey law, which, as Washington law does, prohibits any form of contribution from the employer. The lift truck manufacturer sought contribution from the worker's employer, a New Jersey employer. At the time of the accident, Pennsylvania law, in conflict with New Jersey law, allowed a limited contribution to the extent of workers' compensation benefits *1238 paid by the employer as does Idaho law.[4]
The Pennsylvania Supreme Court applied an analysis similar to that of the Restatement and held that New Jersey law should apply. The court said in part:

New Jersey has the paramount interest in the manner by which its workmen's compensation program will be administered. New Jersey has undertaken to define the obligations of an employer for injuries to his employees and makes that obligation the exclusive liability of the employer. ... In return for providing compensation benefits for any and all injuries which arise in the course of employment, irrespective of fault, the employer is not only granted immunity from common law liability, but is also given a right of subrogation to the extent of compensation benefits paid in the event a third-party tortfeasor is held liable for the injury.... This right of subrogation exists irrespective of the fact that the employer may have been concurrently negligent.

Elston, supra, 216 A.2d at 323 (citations omitted) (emphasis added).
The court went on to say:
In resolving the instant conflict, it is significant to note that the Pennsylvania policy in favor of permitting contribution between joint tortfeasors has been subjected to modification when that policy conflicts with our workmen's compensation program. The limitation imposed on the extent to which the employer is subjected to liability to the third-party tortfeasor reflects a paramount concern with the policies underlying workmen's compensation and the priority of those policies over the equities underlying contribution. Id. at 324 (emphasis added).
The Elston opinion is sound lawit is based upon reason and presents unassailable logic. Thus, this Court's following its lead in this case would not only mean reaching the right result for the right reasons, but would further establish in the interstate system a principled approach to the difficult problem before us.
Subsection (2)(b)the relevant policies of Idahoare easily outlined. Idaho, as the forum state, has an interest in favoring contribution between tort-feasors. As this Court said in Masters v. State, 105 Idaho 197, 200, 668 P.2d 73, 76 (1982), "Contribution is a remedy deeply rooted in the principles of equity, fair play and justice." The policy underlying contribution, however, has been modified in Idaho when it conflicts with our workers' compensation schemeas previously noted, in Idaho, contribution from an employer is limited to the amount of workers' compensation benefits for which the employer is liable. Tucker, supra. This limitation, as the Elston court pointed out, reflects a paramount concern in Idahothe forum statewith the underlying policies of workers' compensation, and the priority of those policies over the equities underlying contribution.
Subsection (2)(c)the relevant policies of Washingtonare likewise easily described. Washington law is unequivocal in declaring that employers are not to be held liable from any suit or claim of contribution in cases such as this one. The granting of immunity is the quid pro quo for a Washington employer's paying set premiums into the state's Industrial Insurance Fund. Disrupting that immunity undermines the incentive on the employer's part to pay its premium and be covered by the Fund. As noted above in the Elston case, this immunity interest is extremely important to smooth-working and effective workers' compensation, and when such an interest is weighed against those interests underlying a limited contribution, it has been held to be of paramount interest.[5]
*1239 Section 145 of the Restatement states that subsections (2)(d)the protection of justified expectationsand (2)(f)certainty of resultare insignificant in the area of determining which state's tort law is applicable. While I agree in general, the facts of this case indicate they are important considerations.
Stack Steel has a justified expectation that its paying into Washington's Industrial Insurance Fund will insulate it from liability where workers' compensation benefits are paid under Washington law. This, I conclude, is a weighty expectation. The State of Idaho, however, likewise has an expectation that the general law of contribution and indemnification in Idaho will apply to suits brought against it in a court of this state. This, too, is a weighty expectation, which I hold to be equal to that of Stack Steel. Accordingly, subsection (2)(d) is inconclusive.
Subsection (2)(e)basic policies underlying this area of lawhave been set forth above in our discussion of subsections (2)(b) and (2)(c). My conclusion is that both Idaho and Washington recognizeto varying degreesthat the underlying policies of workers' compensation is paramount to those of contribution.
Subsection (2)(f)certainty and predictabilityand (2)(g)ease in determination and application of the law to be applied appear to me to favor having Washington law apply. The majority declares that application of Idaho law will enhance certainty and predictability. This argument does not favor the majority at all. It is true that the majority has guaranteed certainty and predictability in this area of law by declaring, as it has done for all practical purposes, that Idaho law always will apply. I do not believe, however, that this is the type of certainty and predictability the authors of the Restatement envisioned when they wrote § 6. If it were, why bother with conflict of laws analyses at all, and, instead, simply say that the law of the forum state will always apply? That would guarantee certainty. It would also establish provincialism as a governing rule of lawa rather discomforting thought for me.
Conflict of laws decisions depend upon the particular facts and policies of the specific case at hand. By their nature, they must be decided on a case-by-case approach. Thus, differences in result will occur. This should not be shocking or disturbing. The certainty and predictability the Restatement envisions, I believe, relates to the implementation and application of a proper and fair analysis of the issue by which any given set of facts can be applied to it and a result reached that is reasonable and foreseeable. This I do not find in today's decision.

3. Conclusions.

My analysis pursuant to § 145 and § 6 leads to the conclusion that Washington law should govern the issue of contribution and indemnification. My conclusion is based on the fact that of all the policies underlying the factors mentioned in § 145, only oneplace of injury favors applying Idaho law. Furthermore, the policy reasons underlying mention of that one factor are not significant in this case. As I stated above, where the place of conduct causing the injury and the place of injury differ, more weight should be given the former factor. In this case, the place of decedent's accident was fortuitous; it could have as easily happened in Washington on a similarly steep hill. Nothing in Idaho tort law, such as contribution and indemnification, could have in any way deterred the tragic accident from occurring in Idaho. Accordingly, the policy reasons underlying reference to § 145(2)(a) are minimal at best.
None of the reasons and policies underlying mention of the factors enumerated in § 6 support application of Idaho law, although some are inconclusive. Accordingly, I would hold, as to the Washington Department of Labor's appeal, that Washington law governing contribution and indemnification *1240 should apply. I, therefore, would reverse the district court on this point.

II.
After holding that Idaho law governs the issue of contribution and indemnification, the majority next holds that Idaho law also governs the right of reimbursement of the Department of Laborthe agency paying out worker's compensation benefits to decedent's beneficiaries. This result is only possible by pretending that Idaho worker's compensation benefits have been paid out. Only then does it make sense to apply Idaho's law governing contribution in worker's compensation related cases. As the facts reveal, however, this is not the case.
Section 185 of the Restatement is right on point as to this issue, and completely contradicts the majority's holding. It states:
The local law of the state under whose workmen's compensation statute an employee has received an award for an injury determines what interest the person who paid the award has in any recovery for tort or wrongful death that the employee may obtain against a third person on account of the same injury.
This conclusion is sound. Unlike the first issue, which involved a conflict of laws involving competing legitimate state interests, only Washington has an interest in having its law apply on this point. Idaho, the forum state, does not have such an interest in this case, for Idaho worker's compensation benefits have not been paid. Only the state that has paid worker's compensation benefits has a legitimate interest in having its laws regarding reimbursement in worker's compensation cases apply; I can think of no sound reason why Idaho, as the forum state, would want its reimbursement scheme to apply where worker's compensation benefits have not been paid under Idaho law. I would accordingly reverse the district court on this point, and hold that Washington law governs the Department of Labor's rights of reimbursement.

APPENDIX

III

THE STATE OF IDAHO'S APPEAL

A.
The State of Idaho has filed an appeal from the trial court's failure to grant its motion for partial summary judgment. The first issue raised by the State of Idaho is whether or not both Mrs. Barringer and her minor son have separate wrongful death claims for which each is entitled to a separate recovery against the State of Idaho. The issue, as presented by the State of Idaho, focuses around I.C. § 6-926's "per person" limitation, raising the question of whether the word "person" refers to the injured person or the person or persons filing claims against the state. We need not decide that issue, however, for it is clear that there is only one personMrs. Barringerwho can file a claim against the State of Idaho in this case.
Wrongful death statutes, such as the one under which Mrs. Barringer and her son are suing, create a cause of action not recognized at common law. Everett v. Trunnell, 105 Idaho 787, 789, 673 P.2d 387, 389 (1983). Therefore, "the right of a person to recover for the wrongful death of another is statutory, and a person seeking to recover must qualify under the statute." Id. In the recent case of Schiess v. Bates, 107 Idaho 794, 797, 693 P.2d 440, 443 (1984), we made it clear that for purposes of determining who can sue under Idaho's wrongful death statute, that determination is made at the date of death. See also Frisbie v. Sunshine Mining Co., 93 Idaho 169, 457 P.2d 408 (1969). Thus, the statute in force at the date of Mr. Barringer's death is the statute under which Mrs. Barringer and her son must qualify to have valid claims. That statute, which has since been amended,[3] read as follows:

*1241 "5-311. Action for wrongful death.  When the death of a person, not being a person provided for in section 5-310, Idaho Code, is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just."
In Schiess v. Bates, supra, we interpreted "heirs" under the "old" § 5-311 (which is the applicable statute for the Barringers), as being those people who are entitled to inherit the property of the decedent, according to the laws of intestate succession in effect as of the date of death. Schiess v. Bates, 107 Idaho at 796, 693 P.2d at 442; Everett v. Trunnell, 105 Idaho at 789, 673 P.2d at 389.
The laws of intestate succession in effect as of the date of Mr. Barringer's death are found at I.C. §§ 15-2-102 and -103. They provide that a surviving spouse receive all of the community property and the first $50,000, and one-half of the remaining balance of the decedent's separate property. Surviving children only become "heirs" of the decedent if the decedent leaves separate property with a value in excess of $50,000.
There is no allegation in the Barringers' complaint that Mr. Barringer left separate property in the amount of $50,000 or more; therefore, William Barringer, Jr., is not an heir for purposes of the applicable I.C. § 5-311 and does not qualify as a plaintiff under that statute. Accordingly, we hold that in this case there is but one valid wrongful death claim against the state, that of Mrs. Barringer, which I.C. § 6-926 limits to $100,000.

B.
The second issue raised by the state's appeal is whether or not the plaintiff is precluded by I.C. § 6-926 from claiming and proving more than $100,000 damages against the State of Idaho in this case.
This second issue is resolved by the express language of I.C. § 6-926, in effect on January 23, 1978, the time of this accident, which states in part:
"If any judgment or claim against a governmental entity or its employee under this act exceeds the one hundred thousand dollars ($100,000) per person limited to three hundred thousand dollars ($300,000) in any one (1) accident where two (2) or more persons have claims or judgments on account of personal injury or death, the court shall reduce the amount to the minimum requirement unless the governmental entity has provided liability coverage in excess of the minimum requirement. In this event, the court shall reduce the amount of the claim or judgment to a sum equal to the applicable limits provided in the insurance policy or provided under the comprehensive liability plan." (Emphasis supplied.)
The express language of the statute requires the court to reduce the amount of both any "claim" or any "judgment" to the amount of the minimum requirement, i.e., $100,000. Accordingly, if the state is the only party against whom damages are asserted by the plaintiff, as in this case, then the court must reduce the plaintiff's "claim" which is submitted to the jury to the sum of $100,000. That limitation would not apply, however, to a plaintiff's claim against any other non-governmental defendant who, as an additional party defendant in such an action, would be jointly liable for the same damages asserted against the State of Idaho. Thus, in a case such as Leliefeld v. Johnson, 104 Idaho 357, 659 P.2d 111 (1983), where there were other defendants besides the State of Idaho, the plaintiff was entitled to allege and prove damages in excess of the $100,000 limitation applicable to the defendant State of Idaho because of the presence of other *1242 defendants not subject to that limitation. However, under the express wording of I.C. § 6-926, in effect at the time of this accident, both the "claim" and the "judgment" against the State of Idaho must be reduced by the court to the minimum requirement of I.C. § 6-926.
The order of the district court, to the extent that it is inconsistent with this opinion, is reversed and the cause remanded for further proceedings consistent with this Court's opinion.
Costs to appellant State of Idaho. No attorney fees allowed.
DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.
NOTES
[1] The only factual difference between this case and Runcorn is that in Runcorn the tort victim employee moved to Idaho after the accident and pending litigation. Such an insignificant change in contacts cannot affect the choice of law in this case.
[2] The employer Stack Steel has not appeared or filed a brief on appeal. Since Idaho law provides that the employer's negligence, if any, can be litigated whether or not the employer is a party to the action, there is no compelling need for Stack Steel to be a party to this action. Pocatello Industrial Park Co. v. Steel West, Inc., 101 Idaho 783, 621 P.2d 399 (1980); Tucker v. Union Oil Co. of Calif., 100 Idaho 590, 603 P.2d 156 (1979). However, we note that Stack Steel has counterclaimed against the State of Idaho for property damages to its truck and accordingly is now a party to the action unless that counterclaim is dismissed.
[3] I.C. § 6-926, as amended in 1978, reads in pertinent part:

"If any judgment or judgments, including costs and attorney fees that may be awarded, are returned or entered, and in the aggregate total more than one hundred thousand dollars ($100,000), whether in one (1) or more such cases, the court shall reduce the amount of the award or awards, verdict or verdicts, or judgment or judgments in any case or cases within its jurisdiction so as to reduce said aggregate loss to said sum of one hundred thousand dollars ($100,000)...."
[1] The word "judgment" is a term of art with a clearly defined meaning in a litigation context. I.R.C.P. 54; Black's Law Dictionary, p. 755 (5th ed.).
[2] Both these rules of construction enjoy long standing acceptance in this court. For the first rule, see Umphrey v. Sprinkel, 106 Idaho 700, 682 P.2d 1247 (1983); Union Pacific R.R. Co. v. Board of Tax Appeals, 103 Idaho 808, 654 P.2d 901 (1982); Norton v. Dept. of Employment, 94 Idaho 924, 500 P.2d 825 (1972); Stucki v. Loveland, 94 Idaho 621, 495 P.2d 571 (1972); State v. Alkire, 79 Idaho 334, 317 P.2d 341 (1957); Wright v. Village of Wilder, 63 Idaho 122, 117 P.2d 1002 (1941).

For the second rule, see Lincoln County v. Fidelity and Deposit Co. of Maryland, 102 Idaho 489, 632 P.2d 678 (1981); Totusek v. Dept. of Employment, 96 Idaho 699, 535 P.2d 672 (1975); DeRousse v. Higginson, 95 Idaho 173, 505 P.2d 321 (1973); McKenney v. McNearney, 92 Idaho 1, 435 P.2d 358 (1967); Hawkins v. Chandler, 88 Idaho 20, 396 P.2d 123 (1964); Hopson v. North Am. Ins. Co., 71 Idaho 461, 233 P.2d 799 (1951); Stewart v. Common School Dist. No. 17 of Owyhee County, 66 Idaho 118, 156 P.2d 194 (1945).
[3] The section was amended by 1978 Idaho Sess. Law Ch. 262, pp. 630, 634. The section was amended by repealing the prior version and enacting a new version. The amendment was effective on March 29, 1978, subsequent to Mr. Barringer's accident. As amended, the relevant portion reads:

"If any judgment or judgments, including costs and attorney fees that may be awarded, are returned or entered, and in the aggregate total more than the applicable limit, whether in one or more cases, the court shall reduce the amount of the award or awards, verdict or verdicts, or judgment or judgments in any case or cases within its jurisdiction as to reduce said aggregate loss to said applicable statutory limit or the limits provided by said valid, collectible insurance, if any, which was [is] greater."
As the above language indicates, the amendment was substantial. Furthermore, the fact that it was accomplished by a repeal and new enactment belies any contention that the legislature was simply clarifying its purported oversight in including the term "claim" in § 6-926.
[1] Unknown to me is how and when an agreement was made to release today's opinion for the Court as a Per Curiam. Over the years it has been an implicit rule that where there is a dissent, the opinion's author is disclosed. Today there are two dissents.
[1] The majority today says that Runcorn "disposed" of the conflict of laws issue and is controlling in this case. Ante p. ___, 727 P.2d 1225. In light of the attention the Court paid to this issue in Runcorndevoting one whole paragraph to the mattersuch a statement may be an understatement.
[2] Stack Steel denied in its answer that it committed any negligence relating to decedent's accident in the State of Idaho.
[3] Illinois and New York are the only states that allow full contribution. Doyle v. Rhodes, 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984); Dole v. Dow Chemical Co., 30 N.Y.2d 143, 282 N.E.2d 288 (1972). Besides Idaho, there are only three other states that allow limited contribution: California, Rodgers v. W.C.A.B., 204 Cal. Rptr. 403, 682 P.2d 1068 (1984); Minnesota, Lambertson v. Cincinnati Corp., 312 Minn. 114, 257 N.W.2d 679 (1977); and North Carolina, Essick v. City of Lexington, 233 N.C. 600, 65 S.E.2d 220 (1951), overruled on other grounds; Floyd v. Nash, 268 N.C. 547, 151 S.E.2d 1 (1966).
[4] Subsequent to Elston, supra, the Pennsylvania legislature eliminated any allowance for limited contribution. PA.STAT.ANN. tit. 77) 481(b) (Supp.1981).
[5] As mentioned above, see note 1, supra, my research has uncovered only two statesNew York and Illinoisin which full contribution is allowed in a workers compensation context. In all other states, contribution is either denied entirely (the majority of states) or allowed in a limited format in workers' compensation cases.
[3] See 1984 Idaho Sess.Laws, ch. 158, § 3, p. 385, which defines more broadly "heirs" for purposes of qualifying as a plaintiff under the statute.